The government's interests will not be harmed by a brief continuation of the status quo. A stay of removal in this case serves justice, efficiency, and compassion without undermining enforcement or policy objectives. Accordingly, the Board should find that this factor also weighs heavily in favor of granting a stay.

## IX. PUBLIC INTEREST

Family unity and allowing lawful immigration processes to proceed serve the public interest. The BIA has consistently recognized that family unity and the orderly adjudication of immigration benefits serve the public interest. *See Matter of Velarde-Pacheco*, 23 I&N Dec. 253, 256 (BIA 2002) (family unity is a weighty discretionary factor); *Matter of Hashmi*, 24 I&N Dec. 785, 793 (BIA 2009) (continuances should be granted to allow family-based immigration processes to move forward); *Matter of Avetisyan*, 25 I&N Dec. 688, 694 (BIA 2012) (administrative closure appropriate to permit collateral applications to proceed in the interest of fairness and efficiency); *Matter of Sanchez Sosa*, 25 I&N Dec. 807, 815 (BIA 2012) (continuances ordinarily warranted to allow adjudication of congressionally provided relief). These precedents clarify and support the idea that that ensuring family unity and allowing lawful immigration processes to be completed is firmly embedded in BIA jurisprudence and the public interest.

## X. CONCLUSION AND PRAYER FOR RELIEF

WHEREFORE for foregoing reasons, Respondents, Marcia Elizabeth Astudillo Torres and Paulo Andres Torres Astudillo, respectfully request that this Honorable Board Grant their Emergency Motion to Stay Removal. Respondents have demonstrated a strong likelihood of

success on the merits of her Motion to Reopen, which is based on newly unavailable evidence, a approved I-360 Petition before USCIS.

The government will suffer no substantial injury from a temporary stay, and the public interest strongly supports permitting this mother to remain with her child while lawful proceedings are pending.

Respondent has acted in good faith, has fully complied with all legal requirements, and seeks only the opportunity to have her Motion to Reopen adjudicated before any removal action is taken, an opportunity consistent with due process, fairness, and U.S. legal protections for immigrant children and their families.

WHEREFORE, the Respondents respectfully pray that the Board grant this emergency Motion to Stay Removal, issue a stay of removal pending full adjudication to the Motion to Reopen and grant such other and further relief as the Board deems just and proper. Respondents respectfully request that the Board exercise its discretion and grant a stay of removal pending the adjudication of their Motion to Reopen.

Respectfully submitted,

Clerk's Office
OCT 03 2025
Received
BIA

Andrea C. Soto, Esq.
Attorney for Respondents

## EXHIBITS IN SUPPORT OF MOTION TO REOPEN AND REMAND


| EXH. | NAME | PAGE(S) |
|---|---|---|
| A | Minor Respondent's Approved I-360 Petition before USCIS............................................................ | Pp. 13-13 |
| B | New York Family Court Orders...................................... | Pp. 14-19 |
| C | Lead Respondent's Medical and Psych Provider Letters indicating Lead Respondent's delicate medical and Psych Conditions ...... | Pp. 21-37 |
| D | EOIR BIA Payment Receipt................................................ | Pp. 39-39 |

# EXHIBIT "A"

# I-797 | NOTICE OF ACTION

| Receipt Number | | Case Type |
|---|---|---|
| MSC2590447524 | | I360 - PETITION FOR AMERASIAN, WIDOWER, OR SPECIAL IMMIGRANT |
| Received Date 03/28/2025 | Priority Date 03/28/2025 | Petitioner A226 088 781 TORRES ASTUDILLO, PAULO ANDRES |
| Notice Date 08/22/2025 | Page 1 of 1 | Beneficiary A226 088 781 TORRES ASTUDILLO, PAULO ANDRES |

SOTO LAW PLLC
c/o ANDREA SOTO
445 HAMILTON AVENUE STE 407
WHITE PLAINS NY 10601

Notice Type: Approval Notice
Class: SL6
Section: Special Immigrant-Juvenile

The above petition has been approved.

The petition indicates that the person the petition is for is in the United States and will apply for adjustment of status. He or she should access the USCIS website at USCIS.gov/i-485 to obtain Form I-485, Application for Permanent Residence. A copy of this notice should be submitted with the application.

If the person for whom you are petitioning decides to apply for a visa outside the United States based on this petition, the petitioner should file Form I-824, Application for Action on an Approved Application or Petition, to request that we send the petition to the Department of State National Visa Center (NVC).

The NVC processes all approved immigrant visa petitions that require consular action. The NVC also determines which consular post is the appropriate consulate to complete visa processing. It will then forward the approved petition to that consulate.

The approval of this visa petition does not in itself grant any immigration status and does not guarantee that the alien beneficiary will subsequently be found to be eligible for a visa, for admission to the United States, or for an extension, change, or adjustment of status.

Please read the back of this form carefully for more information.

**THIS NOTICE IS NOT A VISA AND MAY NOT BE USED IN PLACE OF A VISA.**

**NOTICE:** Although this application/petition has been conditionally approved, USCIS and the U.S. Department of Homeland Security reserve the right to verify the information submitted in the application, petition, and/or supporting documentation to ensure conformity with applicable laws, rules, regulations, and other authorities. Methods used for verifying information may include, but are not limited to, the review of public information and records, contact by correspondence, the Internet, or telephone, and site inspections of businesses and residence. Information obtained during the course of verification will be used to determine whether final approval, revocation, rescission, and/or removal proceedings are appropriate.Applicants, petitioners, and the representatives of record will be provided an opportunity to address derogatory information before any formal proceedings is initiated.

Please see the additional information on the back. You will be notified separately about any other cases you filed.

**USCIS encourages you to sign up for a USCIS online account. To learn more about creating an account and the benefits, go to https://www.uscis.gov/file-online.**

National Benefits Center
U.S. CITIZENSHIP & IMMIGRATION SVC
P.O. Box 648003
Lee's SummitMO64002
**USCIS Contact Center: www.uscis.gov/contactcenter**

# EXHIBIT “B”

F.C.A §§651, 652, 654;
D.R.L §240

At a Term of the Family Court of the State of New York, held in the County of Westchester, White Plains, New York, March 19, 2025

PRESENT: Hon. Arlene A. Gordon-Oliver, J.F.C.
FAMILY COURT OF THE STATE OF NEW YORK
COUNTY OF WESTCHESTER

---------------------------------------------------------------------------X

In the Matter of a Proceeding for Custody under article 6 Of the family Court Act or Section 240 of the Domestic Relations Law

Docket No. V-09237-24

File No. 177147

MARCIA ELIZABETH ASTUDILLO TORRES
Petitioner
Relationship to child: Mother

-against-

**ORDER ON PETITION FOR CUSTODY**

RAUL ELIDIO TORRES ALTAMIRANO
Respondent
Relationship to child: Father

Subject Child: **PAULO ANDRES TORRES ASTUDILLO (DOB: 05/09/2011)**

A Minor.

---------------------------------------------------------------------------X

The Petitioner herein having filed a petition on October 11, 2024, pursuant to Article 6 of the Family Court Act, Section 240 of the Domestic Relations Law, requesting an Order of custody of the following Paulo Andres Torres Astudillo, Date of Birth May 9, 2011;

And the Respondent having consented to the petition;

And the Court-Appointed Attorney for the Child, Donna Abrams, Esq. having consented to the award of custody to the Petitioner;

And the Court having searched the statewide registry of orders of protection, the sex offender registry and the Family Court's warrant and child protective records, and having notified the attorneys for the parties and for the child of the results of these searches; and having found no results;

AND THE MATTER HAVING DULY COME ON TO BE HEARD BEFORE THIS COURT, NOW, after examination and inquiry into the facts and circumstances of the case and after hearing the proofs and testimony offered in relation thereto, this Court finds and determines that:

**IT IS THEREFORE ORDERED** that the best interest of Paulo Andres Torres Astudillo requires that Custody be awarded as follows: sole legal and physical custody to the Petitioner, his mother, Marcia Elizabeth Astudillo Torres.

Dated: March 19, 2025
White Plains, New York

ENTER:

Hon. Arlene A. Gordon-Oliver, J.F.C.

PURSUANT TO SECTION 1113 OF THE FAMILY COURT ACT, AN APPEAL FROM THIS ORDER MUST BE TAKEN WITHIN 30 DAYS OF RECEIPT OF THE ORDER BY APPELLANT IN COURT, 35 DAYS FROM THE DATE OF MAILING OF THE ORDER TO APPELLANT BY THE CLERK OF COURT, OR 30 DAYS AFTER SERVICE BY A PARTY OF THE ATTORNEY FOR THE CHILD UPON THE APPELLANT, WHICHEVER IS EARLIEST.

Check applicable box:
( ) Order mailed on [specify date(s) and to whom mailed]: ______________________
( ) Order received in court on [specify date(s) and to whom given]: ______________________

8 U.S.C. § 1101 GF-42

(Special Immigrant Juvenile Status Order)
At a Term of the Family Court of the State
of New York, held in the County of
Westchester-White Plains, NY,
March 19, 2025

PRESENT: Hon. Arlene A. Gordon-Oliver, J.F.C.
FAMILY COURT OF THE STATE OF NEW YORK
COUNTY OF WESTCHESTER

---------------------------------------------------------------------X

In the Matter of a Proceeding for
Custody under article 6
Of the family Court Act or Section 240
of the Domestic Relations Law

Docket No. V-09237-24

File No. 177147

MARCIA ELIZABETH ASTUDILLO TORRES
Petitioner
Relationship to child: Mother

-against-

**ORDER – SPECIAL IMMIGRANT JUVENILE STATUS**

RAUL ELIDIO TORRES ALTAMIRANDO
Respondent
Relationship to child: Father

**Subject Child: PAULO ANDRES TORRES ASTUDILLO (DOB: 05/09/2011)**

A Minor.

---------------------------------------------------------------------X

This Court, after examining the motion papers and supporting affidavits, all the pleadings and prior proceedings in this matter, and hearing credible testimony, finds, in accordance with 8 U.S.C. § 1101(a)(27)(J), New York State Family Court Acts § 651, § 1012 and New York State Surrogate's Court Procedure Act § 1701, that:

1. This Family Court is a court which has jurisdiction to make judicial determinations about the custody and care of minors, which include juveniles up to the age of 21. This court took jurisdiction of the above-named juvenile prior to the age of 21 pursuant to New

York State Family Court Acts § 651, §661(a), § 115(c) and New York State Surrogate's Court Procedure Act § 103(27).

2. The above-named child is under 21 years of age and a minor for purposes of Guardianship and/or custody of the person. New York Surrogate Court Procedure Act § 103(27), New York Family Court Act § 661(a).

3. The above-named child is unmarried.

4. The above-named child dependent on the Family Court, a juvenile court under New York law, by virtue of a custody order that was granted by this Court. The above-named child is dependent upon the Family Court and has been committed to and placed in the physical custody of individual, namely, Marcia Elizabeth Astudillo Torres, or entity appointed by the state of Family Court pursuant to the New York State Family Court Acts § 141, § 651, § 1012, and New York State Surrogate's Court Procedure Act § 1701. *Matter of Antowa McD, 856 NYS2d 576 (1st Dept. 2008). Matter of Antowa McD, 856 NYS2d 576 (1st Dept. 2008); Matter of Trudy-Ann W. v. Joan W., 901 NYS2d 296 (2d Dept. 2010).* He has been in the physical care of, Marcia Elizabeth Astudillo Torres, and continues to reside with her. The grant of custody also constitutes a legal commitment of the custodian to the child pursuant to New York Surrogates Act § 1706, which states that the custodian "shall have the right and responsibility to make decisions, including issuing any necessary consents, regarding the child's protection, education, care and control, health, and medical needs, and the physical custody of the person of the child." The grant of custody is also pursuant to New York Family Court Act § 657, which enunciates the rights and authorities of a person possessing a lawful order of custody of a child vis-à-vis school enrollment, health insurance enrollment, and specifics expressly that "persons possessing a lawful order of custody of a child shall have the right and responsibility to make decisions, including issuing any necessary consents, regarding the child's protection, education, care and control, health and medical needs, and the physical custody of the child." There is no legal distinction in New York between the effects of a grant of custody as compared to a grant of guardianship. See, *Matter of Allen V. Fiedler*, 96 A.D. 3d 1682 (4th Dept. 2012). The child is in need of a legal custodian to support him with housing, medical care, educational planning, emotional and financial support. The Court finds that custody serves the child's best interests.

5. Reunification with the father, Raul Elidio Torres Altamirano, is not viable due to abandonment. Thus, under NY Fam. Ct. Act Section 1092(a) the child is considered a

destitute child because he was left in a state of suffering due to lack of care of the father. The record establishes that the father has left the child without providing for his support or care for over seven (7) years. The child's father has not had any contact with the Child for over seven (7) years. After testimony and a review of the record the court finds that the father has not supported the child emotionally or financially. *Alamigir A.*, 81 3d 937 (1st Dept. 2011). The father has not provided for food, clothing, shelter, educational and medical needs as required. The father has neglected his parental duties. The child is abandoned under NYS Social Services Law, Section 384-b(5)(a). *Pineda v. Diaz, 127 A.D.3s 1203 (2d Dep't 2015); Marcelina M.G. v. Israel S., 112 A.D.3d 100, 973 N.Y.S. 2d 714, 721 (2d Dep't 2013).*

6. It is in the child's best interest to remain with the petitioner. There is no available relative or viable resource for the child to live with in the country of nationality or country of last habitual residence of the child or the birth parents. There is no one who is able or willing to provide the child with a safe home and provide for the child's safety and needs. It is in the child's best interest to remain with the petitioner where he has the opportunity to be in a stable environment and further his education. It is not in the Child's best interest to be returned to Ecuador. *Trudy Ann W., 73 AD 793 (2nd Dept. 2010); N.Y. Surr. Ct. Proc. Act § 1707; See also, Eschbach v. Eschbach, 56 N.Y.2d 167 (1982), Matter of Marisol N.H., 115 AD3d 185 (2d Dept. 2014).*

Dated: March 19, 2025
White Plains, New York

ENTER:

Hon. Arlene A. Gordon-Oliver, J.F.C.

PURSUANT TO SECTION 1113 OF THE FAMILY COURT ACT, AN APPEAL FROM THIS ORDER MUST BE TAKEN WITHIN 30 DAYS OF RECEIPT OF THE ORDER BY APPELLANT IN COURT, 35 DAYS FROM THE DATE OF MAILING OF THE ORDER TO APPELLANT BY THE CLERK OF COURT, OR 30 DAYS AFTER SERVICE BY A PARTY OR THE ATTORNEY FOR THE CHILD UPON THE APPELLANT, WHICHEVER IS EARLIEST. Check applicable box:

( ) Order mailed on [specify date(s) and to whom mailed]:____________________
( ) Order received in court on [specify date(s) and to whom given]:______________

# EXHIBIT "C"

*Hugo M. Morales, M.D., P.C.*
*918 Pelham Pkwy South*
*Bronx, New York 10462*
*(718) 547-5300*

*Diplomate of Psychiatry and Neurology*
*Diplomate of the American Board of Forensic Medicine*

September 30, 2025

Re: Marcia E. Austudillo Torres
DOB: 07/28/1989

## PSYCHIATRIC EVALUATION

Patient is a female born in Ecuador on July 28, 1989. She came under my care due to a fragile mental status. Her demeanor has been described as extremely depressed, apathetic, worrisome, tearful and miserable. Her severe psychopathology as manifested by depression, anxiety, nightmares, worriness, crying spells, insomnia, frustration, irritability and agitation interfere greatly with her ability to function properly at any level despite trying to do the best she can.

## CHIEF COMPLAINTS

The patient's predicament began after May 6, 2025. She received an order of deportation. Following this order, she experienced a decline in her cognitive, emotional and behavioral functioning. Her psychological distress has been described as having frequent bad days, feeling extremely despondent, tearful, worrisome, lacking strength and motivation, and suffering from insomnia, flashbacks and nightmares. Feelings of uselessness, helplessness, crying spells, negative expectancy of the future, frustration, poor concentration and poor memory hinder her ability to function properly at any level. Marcia stated that she becomes frustrated and crying hysterically thinking about what would happen to her 14-years-old son if she gets deported, "he needs me."

## LONGITUDINAL HISTORY

Patient migrated to the United States on June 9, 2024, looking for a better way of living. As stated above, her predicament began after May 6, 2025, after being notified of an order of deportation. She has become progressively depressed, suffering from severe anxiety, poor concentration, poor memory, frustration and severe crying spells.

**Patient: Marcia E. Austudillo Torres**
**DOB: 07/28/1989**

## MENTAL STATUS

It is my professional opinion based upon a reasonable degree of psychiatric certainty that the patient's mental status and behavior in general is totally dysfunctional because of her immigration status, which has rendered her unable to cope properly with her daily activities and personal needs. I spent a considerable amount of time reassuring and advising her to keep calm and think positively. Her mental status has been seriously compromised. She is well oriented to time, place and person. Patient's stream of mental activity is coherent and relevant. Insight judgment is fair. Her mood is depressed, anxious, worrisome and apathetic.

## DIGNOSIS

Major Depressive Disorder (F33.2)
Generalized Anxiety Disorder (F41.1)

## CAUSALITY

I am respectfully asking that you take into consideration the hardship Ms. Austudillo is and will continue facing if she is not granted a waiver for cancellation of removal. Her absence will be an extreme hardship for her and her son as he not only loves her; he depends on her in every aspect of his life. I know you hear from thousands of people daily, respectfully, please consider this case and grant Ms. Austudillo this removal of cancellation. It is my professional opinion that Ms. Austudillo presents no danger whatsoever to the interest of the United States of America.

## RECCOMENDATION:

Patient was advised to continue her treatment on a regular basis.

Very truly yours,

Hugo M. Morales, M.D., P.C.

HUGO M. MORALES, MD, PC
918 PELHAM PKWY SOUTH
BRONX, NY 10462
LIC# 093295

WMC Health | Westchester Medical Center

Westchester Medical Center Health Network

Westchester Medical Center
100 Woods Road
Valhalla, NY 10595-1530

Patient: ASTUDILLO TORRES, MARCIA
MRN: 4398482
FIN: 1059422897
DOB/Age: 7/28/1989 36 years
Admin Sex: Female
Birth Sex: Female
Location: WMC Emergency Department; HW13; A

Admit: 9/27/2025
Disch:
Admitting:

## Emergency Documentation

Document Type: ED Discharge Summary
Service Date/Time: 9/27/2025 05:18 EDT
Result Status: Auth (Verified)
Document Subject: ED Discharge Summary
Sign Information: Richards RN,Jessica (9/27/2025 05:18 EDT)
Review Information:

# ASTUDILLO TORRES, MARCIA

**DOB:** 07/28/1989
**MRN:** 4398482
**Visit Date:** 09/27/2025

## General Emergency Department Discharge Instructions

The exam and treatment you received in the Emergency Department were for an urgent problem and are not intended as complete care. It is important that you follow up with a doctor, nurse practitioner, or physician's assistant for ongoing care. If your symptoms become worse or you do not improve as expected and you are unable to reach your usual health care provider, you should return to the Emergency Department. We are available 24 hours a day.

### You were treated in the ED by:

Primary Physician:
Plansky, Jason

### Your Diagnosis from Today's Visit is:

Headache
Syncope

### Medication(s) Administered during your Emergency Department Visit:

**Given**

**Benadryl** 25 mg IV Push
**ketorolac** 15 mg IV Push
**lactated ringer's bolus** 1000 mL IV Bolus
**Reglan** 10 mg IV Push

### Tests Performed:

Lab

| Test Name | Test Result | Date/Time |
|---|---|---|
| Glucose | 98 mg/dL | 09/27/2025 02:56 EDT |
| Sodium | 136 mEq/L | 09/27/2025 02:56 EDT |
| Potassium | ↓ 3.3 mEq/L | 09/27/2025 02:56 EDT |
| Chloride | 104 mEq/L | 09/27/2025 02:56 EDT |
| CO2 | 24 mEq/L | 09/27/2025 02:56 EDT |
| BUN | 9 mg/dL | 09/27/2025 02:56 EDT |
| Creatinine | 0.66 mg/dL | 09/27/2025 02:56 EDT |
| Anion Gap | 8 mEq/L | 09/27/2025 02:56 EDT |
| AST | 17 U/L | 09/27/2025 02:56 EDT |
| ALT | 16 U/L | 09/27/2025 02:56 EDT |

## Westchester Medical Center

| | | | |
|---|---|---|---|
| Patient Name: | ASTUDILLO TORRES, MARCIA | | |
| MRN: | 4398482 | Admit: | 9/27/2025 |
| FIN: | 1059422897 | Disch: | |
| DOB/Age: | 7/28/1989 36 years | Admitting: | |
| Admin Sex: | Female | | |

### Emergency Documentation

| Test Name | Test Result | Date/Time |
|---|---|---|
| Alkaline Phosphatase | 71 U/L | 09/27/2025 02:56 EDT |
| Total Bilirubin | 0.8 mg/dL | 09/27/2025 02:56 EDT |
| Total Protein | [illegible] | 09/27/2025 02:56 EDT |
| Albumin | 4.5 g/dL | 09/27/2025 02:56 EDT |
| Globulin | [illegible] | 09/27/2025 02:56 EDT |
| eGFR | 117 | 09/27/2025 02:56 EDT |
| Lipase | 21 U/L | 09/27/2025 02:56 EDT |
| Est Glomerular Filtration Rate | See Comment | 09/27/2025 02:56 EDT |
| hCG Quantitative | <2.0 mIntlUnit/mL | 09/27/2025 02:56 EDT |
| Calcium | 9.4 mg/dL | 09/27/2025 02:56 EDT |
| Hemolysis Index | No Hemolysis | 09/27/2025 02:56 EDT |
| Lipemia Index | No Lipemia | 09/27/2025 02:56 EDT |
| Icteric Index | Non Icteric | 09/27/2025 02:56 EDT |
| Estimated Creatinine Clearance | 108.64 mL/min | 09/27/2025 03:52 EDT |
| BNP | <10 pg/mL | 09/27/2025 02:56 EDT |
| Troponin I, High Sensitivity | <4 ng/L | 09/27/2025 04:15 EDT |
| Troponin I, HS Delta 2HRS | Not Applicable | 09/27/2025 04:15 EDT |
| Troponin Interpretation | Not Applicable | 09/27/2025 04:15 EDT |

Radiology

XR Chest 1 View Frontal 09/27/2025 03:37 EDT

## What to Do Next

- Take this sheet with you when you go to your follow-up visit.
- It is very important to your health that you provide your doctor with the final results of medical testing, including the final results of labs and radiology tests, prior to your follow up appointment with your doctor. Some of these results may not have been finalized at the time of your ED visit.
- Take all medications as directed.
- If your physician is a member of the Medical Staff at Westchester Medical Center, he/she can obtain your records by logging into the WMC Network. You may also obtain your Lab and Radiology results via the Patient Portal. Instructions for the Patient Portal are available on the website www.westchestermedicalcenter.org. If you need further assistance with your medical record, please call 914-493-7600.
- You may obtain copies of you Emergency Department record by completing an authorization request from the Health Information Management Department. The authorization form is available on the WMC website

**Westchester Medical Center**

| | | | |
|---|---|---|---|
| Patient Name: | ASTUDILLO TORRES, MARCIA | | |
| MRN: | 4398482 | Admit: | 9/27/2025 |
| FIN: | 1059422897 | Disch: | |
| DOB/Age: | 7/28/1989 36 years | Admitting: | |
| Admin Sex: | Female | | |

## *Emergency Documentation*

www.westchestermedicalcenter.org found under 'Patient and Visitors'-> 'Obtain Medical Records'. Follow the instructions on the website for submitting and allow 5-10 days for processing once the request is received.

- If you have any problem arranging the follow-up visit, contact the Emergency Department immediately.

## You Need to Schedule the Following Appointments:

**Follow Up with** OPD General Neurology
**When:** Within 3 to 5 days

**Where:** 19 Bradhurst Ave Suite 700
Hawthorne, NY 10532-2140
(914)493-7667

**Follow Up with** primary care doctor
**When:** Within 24 Hours

## Medications

| | What | How Much | When | Instructions | Next Dose |
|---|---|---|---|---|---|
| *Unchanged* | ocular lubricant (TheraTears preservative-free ophthalmic solution) | 1 Drops Both eyes | 4 times a day as needed for as needed for dry eyes | | |

## Education Materials

### Síncope en los adultos
### Syncope, Adult




El síncope hace referencia a una afección en la cual una persona pierde la conciencia temporalmente. También se lo puede conocer como desmayo. La causa del síncope es una disminución súbita del flujo de sangre al cerebro. Puede suceder por diversos motivos.

La mayoría de las causas del síncope no son peligrosas. Puede desencadenarse por cosas tales como pinchazos de agujas, ver sangre, sentir dolor o emociones intensas. Sin embargo, el síncope también puede ser un signo de un problema médico grave, como una anomalía cardíaca. Otras causas pueden ser la deshidratación, las migrañas o tomar medicamentos que bajan la presión arterial. El médico puede hacerle estudios para encontrar el motivo por el cual tiene un síncope.

Westchester Medical Center

| | | | |
|---|---|---|---|
| Patient Name: | ASTUDILLO TORRES, MARCIA | | |
| MRN: | 4398482 | Admit: | 9/27/2025 |
| FIN: | 1059422897 | Disch: | |
| DOB/Age: | 7/28/1989 36 years | Admitting: | |
| Admin Sex: | Female | | |

## *Emergency Documentation*

Ante un desmayo, obtenga ayuda médica de inmediato. Comuníquese con el servicio de emergencias de su localidad (911 en los Estados Unidos).

## Siga estas indicaciones en su casa:

Esté atento a cualquier cambio en los síntomas. Para mantener su seguridad y ayudar a aliviar sus síntomas, tome estas medidas:

### Cómo saber cuándo puede estar a punto de desmayarse

- Los signos de que alguien está por desmayarse incluyen lo siguiente:
  - Sentirse mareado, débil, aturdido o como si la habitación estuviera girando.
  - Sentir náuseas.
  - Ver manchas o ver todo blanco o todo negro en el campo de visión.
  - Tener la piel fría y húmeda o sentir calor y sudar.
  - Tener un zumbido en los oídos (acúfenos).
- Si comienza a sentir que podría desmayarse, siéntese o recuéstese inmediatamente. Si se sienta, baje la cabeza y colóquela entre las piernas. Si se recuesta, levante (eleve) los pies por encima del nivel del corazón.
  - Respire profundamente y de manera continua. Espere hasta que los síntomas hayan desaparecido.
  - Pídale a alguien que se quede con usted hasta que se sienta estable.

### Medicamentos

- Use los medicamentos de venta libre y los recetados solamente como se lo haya indicado el médico.
- Si está tomando medicamentos para la presión arterial o para el corazón, póngase de pie lentamente, tómese algunos minutos para permanecer sentado y luego párese. Esto puede reducir los mareos y el riesgo de tener un síncope.

### Estilo de vida

- No conduzca vehículos, no use maquinarias ni practique deportes hasta que el médico lo autorice.
- No beba alcohol.
- No consuma ningún producto que contenga nicotina o tabaco. Estos productos incluyen cigarrillos, tabaco para mascar y aparatos de vapeo, como los cigarrillos electrónicos. Si necesita ayuda para dejar de consumir estos productos, consulte al médico.
- Evite saunas y bañeras de hidromasajes.

### Indicaciones generales

- Converse con el médico acerca de sus síntomas. Es posible que deba realizarse estudios para entender la causa del síncope.
- Beba suficiente líquido como para mantener la orina de color amarillo pálido.
- Evite permanecer de pie mucho tiempo. Si debe permanecer de pie durante mucho tiempo, realice movimientos como los siguientes:
  - Mover las piernas.
  - Cruzar las piernas.
  - Flexionar y estirar los músculos de las piernas.
  - Ponerse en cuclillas.

- Concurra a todas las visitas de seguimiento. Esto es importante.

## Comuníquese con un médico si:

- Tiene episodios como si fuera a desmayarse.

## Solicite ayuda de inmediato si:

- Se desmaya
- Se golpea la cabeza o se lesiona despues de desmayarse
- Tiene cualquiera de estos síntomas que pueden indicar problemas en el corazón:
  - Latidos cardíacos acelerados o irregulares (palpitaciones)
  - Dolor fuera de lo normal en el pecho, el abdomen o la espalda.
  - Falta de aire
- Tiene una convulsión.
- Siente un dolor de cabeza intenso
- Se siente confundido
- Tiene problemas de visión.
- Tiene debilidad intensa o dificultad para caminar.
- Sangra por la boca o el recto, o sus heces son de color negro o aspecto alquitranado.

**Estos síntomas pueden representar un problema grave que constituye una emergencia. No espere hasta que los síntomas desaparezcan. Solicite atención medica de inmediato. Comuníquese con el servicio de emergencias de su localidad (911 en los Estados Unidos). No conduzca por sus propios medios hasta el hospital.**

## Resumen

- El síncope hace referencia a una afección en la cual una persona pierde la conciencia temporalmente. También se lo puede conocer como desmayo. La causa del síncope es una disminución súbita del flujo de sangre al cerebro.
- Los signos de que puede estar por desmayarse incluyen mareos, sensación de desvanecimiento, náuseas, cambios repentinos en la visión o piel fría y húmeda.
- Aunque la mayoría de las causas no implican un peligro, el síncope puede ser un signo de un problema médico grave. Si se desmaya, solicite ayuda de inmediato.
- Si comienza a sentir que podría desmayarse, siéntese o recuéstese inmediatamente. Si se sienta, baje la cabeza y colóquela entre las piernas. Si se recuesta, levante (eleve) los pies por encima del nivel del corazón.

Esta información no tiene como fin reemplazar el consejo del médico. Asegúrese de hacerle al médico cualquier pregunta que tenga.

Document Revised: 05/20/2022 Document Reviewed: 05/20/2022
Elsevier Patient Education © 2024 Elsevier Inc.

# Dolor de cabeza general sin causa
# General Headache Without Cause

El dolor de cabeza es un dolor o malestar que se siente en la zona de la cabeza o del cuello. Hay muchas causas y tipos de dolores de cabeza. Entre los tipos más frecuentes, se incluyen los siguientes:

Westchester Medical Center

Patient Name: ASTUDILLO TORRES, MARCIA
MRN: 4398482
FIN: 1059422897
DOB/Age: 7/28/1989 36 years
Admin Sex: Female

Admit: 9/27/2025
Disch:
Admitting:

## *Emergency Documentation*

- Cefaleas tensionales.
- Cefaleas migrañosas
- Cefalea en brotes.
- Cefaleas diarias crónicas.

En ocasiones, el dolor de cabeza puede no tener una causa específica.

## Siga estas indicaciones en su casa:

Controle su afección para detectar cualquier cambio. Informe a su médico acerca de cualquier cambio. Siga estos pasos para controlar su afección.

**Control del dolor**

- Use los medicamentos de venta libre y los recetados solamente como se lo haya indicado el médico. El tratamiento puede incluir medicamentos para el dolor que se toman por boca o que se aplican sobre la piel.
- Cuando sienta dolor de cabeza acuéstese en un cuarto oscuro y tranquilo.
- Mantenga las luces tenues si las luces brillantes le molestan o sus dolores de cabeza empeoran.
- Si se lo indican, aplíquese hielo en la cabeza y en la zona del cuello:
  - Ponga el hielo en una bolsa plástica.
  - Coloque una toalla entre la piel y la bolsa.
  - Aplique el hielo durante 20 minutos, 2 a 3 veces al día.
  - Retire el hielo si la piel se pone de color rojo brillante. Esto es muy importante. Si no puede sentir dolor, calor o frío, tiene un mayor riesgo de que se dañe la zona.
- Si se lo indican, aplique calor en la zona afectada. Use la fuente de calor que el médico le recomiende, como una compresa de calor húmedo o una almohadilla térmica.

**Westchester Medical Center**

| | | | |
|---|---|---|---|
| Patient Name | ASTUDILLO TORRES, MARCIA | | |
| MRN: | 4398482 | Admit: | 9/27/2025 |
| FIN | 1059422897 | Disch: | |
| DOB/Age | 7/28/1989 36 years | Admitting: | |
| Admin Sex | Female | | |

## *Emergency Documentation*

Coloque una toalla entre la piel y la fuente de calor

Aplique calor durante 20 a 30 minutos.

Retire la fuente de calor si la piel se pone de color rojo brillante. Esto es especialmente importante si no puede sentir dolor, calor o frío. Corre un mayor riesgo de sufrir quemaduras.

### Comida y bebida

- Mantenga un horario para las comidas
- Si bebe alcohol:

  Limite la cantidad que bebe a lo siguiente:

  - De 0 a 1 medida por día para las mujeres que no están embarazadas.
  - De 0 a 2 medidas por día para los hombres.

  Sepa cuánta cantidad de alcohol hay en las bebidas. En los Estados Unidos, una medida equivale a una botella de cerveza de 12 oz (355 ml), un vaso de vino de 5 oz (148 ml) o un vaso de una bebida alcohólica de alta graduación de 1½ oz (44 ml)
- Deje de tomar cafeína o disminuya la cantidad que consume.
- Beba suficiente líquido como para mantener la orina de color amarillo pálido.

### Indicaciones generales



- Lleve un diario de los dolores de cabeza para averiguar qué factores pueden desencadenarlos. Registre, por ejemplo, lo siguiente:

  Lo que usted come y bebe.

  El tiempo que duerme.

  Algún cambio en su dieta o en los medicamentos.
- Pruebe algunas técnicas de relajación, como los masajes.
- Limite el estrés.
- Siéntese con la espalda recta y no tense los músculos.
- No consuma ningún producto que contenga nicotina o tabaco. Estos productos incluyen cigarrillos, tabaco para mascar y aparatos de vapeo, como los cigarrillos electrónicos. Si necesita ayuda para dejar de consumir estos productos, consulte al médico.
- Haga actividad física habitualmente como se lo haya indicado el médico.
- Tenga un horario fijo para dormir. Duerma entre 7 y 9 horas todas las noches o la cantidad de horas que le haya recomendado el médico.
- Concurra a todas las visitas de seguimiento. Esto es importante.

## Comuníquese con un médico si:

- Los medicamentos no le alivian los sintomas.
- Tiene un dolor de cabeza que es diferente de la cefalea habitual.
- Tiene náuseas o vómitos.
- Tiene fiebre.

## Solicite ayuda de inmediato si:

- El dolor de cabeza:
    - Se vuelve intenso rápidamente.
    - Empieza después de hacer actividad física moderada o intensa.
- Tiene alguno de estos síntomas:
    - Vómitos repetidos.
    - Dolor o rigidez en el cuello.
    - Cambios en la visión.
    - Dolor en un ojo o en un oído.
    - Problemas para hablar.
    - Debilidad muscular o pérdida del control muscular.
    - Pérdida del equilibrio o de la coordinación.
- Sufre mareos o se desmaya.
- Experimenta confusión.
- Tiene una convulsión.

Estos síntomas pueden representar un problema grave que constituye una emergencia. No espere a ver si los síntomas desaparecen. Solicite atención médica de inmediato. Comuníquese con el servicio de emergencias de su localidad (911 en los Estados Unidos). No conduzca por sus propios medios hasta el hospital.

## Resumen

- El dolor de cabeza es un dolor o malestar que se siente en la zona de la cabeza o del cuello.
- Hay muchas causas y tipos de dolores de cabeza. En algunos casos, es posible que no se encuentre la causa.
- Lleve un diario de los dolores de cabeza para averiguar qué factores pueden desencadenarlos. Controle su afección para detectar cualquier cambio. Informe a su médico acerca de cualquier cambio.
- Comuníquese con su médico si tiene un dolor de cabeza que es diferente de lo habitual o si los síntomas no se alivian con los medicamentos.
- Solicite ayuda de inmediato si el dolor se vuelve intenso, vomita, tiene pérdida de la visión, pierde el equilibrio o tiene una convulsión.

Esta información no tiene como fin reemplazar el consejo del médico. Asegúrese de hacerle al médico cualquier pregunta que tenga.

Document Revised: 06/07/2022 Document Reviewed: 06/07/2022
Elsevier Patient Education © 2024 Elsevier Inc.

## Allergies

**Westchester Medical Center**

| | | | |
|---|---|---|---|
| Patient Name: | ASTUDILLO TORRES, MARCIA | | |
| MRN: | 4398482 | Admit: | 9/27/2025 |
| FIN: | 1059422897 | Disch: | |
| DOB/Age: | 7/28/1989 36 years | Admitting: | |
| Admin Sex: | Female | | |

***Emergency Documentation***

No Known Allergies

## Additional Information

Primary care providers (PCP) are sometimes referred to as PMD or PCP. They are usually Internal Medicine, Family Practice Physicians or Pediatric Physicians. The Emergency Department is always available 24 hours a day / 7 days a week for emergencies, but we are not a substitute for primary medical care. If you have been to the Emergency Department frequently, there may be added benefit to seeing a primary care provider. If you do not already have a PCP, we can help you find one. A certified medical home such as the WMC Medicine Clinic can provide medical care as well as care coordination. You can reach the WMC Medicine clinic at 914-493-7667. You may have to choose a Physician from the WMC Medicine Clinic as your PCP for your insurance company. Alternatively, your insurance company may provide you with a list of providers available to you. Another comprehensive option depending on your insurance is the Advanced Physician Services Department of Medicine at 914-592-2400. For a list of Pediatric and Adolescent Physicians, please contact Boston Children's Hospital Concierge Service at 1-844-463-2247.

**HEALTH HOME PROGRAM IS A FREE, NO COST SERVICE**

**What can a Health Home program help YOU**

- Connecting to Medical, Mental Health, and Substance Abuse services
- Making and remembering appointments, and help with transportation issues
- Help in understanding and finding affordable medication
- Keeping your treatment on track
- Stress management and crisis recovery
- Help with reapplying for Medicaid
- Help with Finding Affordable Housing
- Assistance with applying for benefits
- Signing up for Food assistance
- Employment and training
- Education
- Family and caregiver support
- Legal aid
- Finding childcare
- Dealing with issues before they become a crisis
- Making healthier decisions
- Staying out of the hospital

**To qualify for the Health Home Program, you:**

Have active Medicaid, AND have two or more chronic conditions (such as heart disease, Asthma, Diabetes, Mental Health condition, HIV/AIDS)

**If you do not have Medicaid, or are not sure if you qualify we can help.**

**Westchester Medical Center**

| | | | |
|---|---|---|---|
| Patient Name | ASTUDILLO TORRES, MARCIA | | |
| MRN | 4398482 | Admit | 9/27/2025 |
| FIN | 1059422897 | Disch | |
| DOB/Age | 7/28/1989 36 years | Admitting: | |
| Admin Sex | Female | | |

## *Emergency Documentation*

If you live in the Westchester, Rockland, Putnam, Orange, Dutchess and Sullivan counties, please call Hudson Valley Care (HVC) at 1-800-768-5080. If you live in Ulster County, please call: The Institute for family health at 877-207-3387 (Referral Code = WMC)

**Financial Assistance Program:**

Our hospital remains devoted to continued excellence in patient care and serving the community. As a partner in the community, we offer a Financial Assistance program which allows us to provide care to qualifying patients without charge or at amounts less than our established rates for all medically necessary services, including outpatient services, inpatient care, and emergency services. For more information, please visit our website www.westchestermedicalcenter.org or to speak with someone, please call us at:

(914) 493-7830 for Valhalla
(845) 483-5406 for Poughkeepsie
(845) 334-2743 for Kingston and Margaretville
(845) 547- 3888 for Suffern, Port Jervis, and Warwick

**Westchester Medical Center**

| | | | |
|---|---|---|---|
| Patient Name | ASTUDILLO TORRES, MARCIA | | |
| MRN: | 4398482 | Admit: | 9/27/2025 |
| FIN: | 1059422897 | Disch: | |
| DOB/Age: | 7/28/1989 36 years | Admitting: | |
| Admin Sex: | Female | | |

## *Emergency Documentation*

**Stroke Prevention and Warning Signs and Symptoms of Stroke:**

| | |
|---|---|
| **IS IT A STROKE?** | Act **FAST** and Check for these signs: |
| FACE | Does the face look uneven? |
| ARM | Does one arm drift down? |
| SPEECH | Does their speech sound strange? |
| TIME | Call 9-1-1 at any sign of stroke |

**Call 911 immediately if you experience:**
-Sudden numbness or weakness of the face, arm, or leg especially on one side of the body.
-Sudden confusion, trouble speaking or understanding
-Sudden trouble seeing in one or both eyes.
-Sudden trouble walking, dizziness, loss of balance or coordination
-Sudden severe headache with no known cause

**Risk Factors for Stroke that can be controlled:**
-Atrial fibrillation
-Cigarette smoking
-Diabetes mellitus
-Excessive alcohol consumption
-High Blood Pressure
-Overweight (BMI greater than 24)
-Physical inactivity
-Poor diet (high in saturated fats, trans fat, cholesterol, or sodium)

**Heart Attack Signs:**
-**Chest discomfort:** Most heart attacks involve discomfort in the center of the chest and lasts more than a few minutes, or goes away and comes back. It can feel like uncomfortable pressure, squeezing, fullness or pain.
-**Discomfort in upper body:** Symptoms can include pain or discomfort in one or both arms, back, neck, jaw or stomach.
-**Shortness of breath:** With or without discomfort
-**Other signs:** Breaking out in a cold sweat, nausea, or lightheaded.
**Remember: MINUTES DO MATTER.** If you experience any of these heart attack warning signs, call 9-1-1 to get immediate medical attention.

**988 Suicide and Crisis Lifeline - 988lifeline.org.**
-Call or text the 988 Suicide and Crisis Lifeline at 988
-You can also contact the Crisis Text Line (text HELLO to 741741)
Both services provide 24-hour, confidential support to anyone in suicidal crisis or emotional distress.

**You should seek Medical Attention immediately, here or at the nearest Emergency Department, if any of the following::**
-You think about hurting yourself or others
-You do not feel safe in your home environment

**Quit smoking. It is the number one cause of preventable disease, disability and death in the U.S.**
-Get Help Quitting: Call the NY State Smokers Quit Line: 1-866-NY-QUITS (1-866-697-8487) or visit www.NYsmokefree.com
-The quit line provides free starter kits of nicotine replacement therapy (NRT) to eligible New Yorkers. Services are free and confidential

**Human Trafficking:** Human Trafficking National Hotline: 1-888-373-7888 24 hours a day, 7 days a week. Confidential w > 200 languages available. www.humantraffickinghotline.org
-Human Trafficking - A form of modern-day slavery

**Westchester Medical Center**

| | | | |
|---|---|---|---|
| Patient Name: | ASTUDILLO TORRES, MARCIA | | |
| MRN: | 4398482 | Admit: | 9/27/2025 |
| FIN: | 1059422897 | Disch: | |
| DOB/Age: | 7/28/1989 36 years | Admitting: | |
| Admin Sex: | Female | | |

## *Emergency Documentation*

-Human Smuggling: A Person illegally crossing the border

**Domestic Violence**
- NYS Domestic and Sexual Violence Hotline 1-800-942-6906
- National Domestic Violence Hotline: 1-800-799-SAFE (7233) Multi Language accessibility deaf or HOH dial 711

If you are being abused, it is NOT your fault. You are NOT alone. You can get help. Being threatened or actual physical abuse is against the law **IF AT ANY TIME YOU FEEL UNSAFE AROUND YOUR SPOUSE OR PARTNER, YOU SHOULD GET AWAY FROM THAT PERSON AND GO TO A SAFE PLACE IMMEDIATELY OR CALL 911.**

**Bullying - Respond to Bullying Immediately: Stopbullying.gov**
-Physical, verbal or psychological attacks or intimidation against a person who cannot properly defend themselves.

**INFANT at Home Care Safety Instructions:**
-To protect against SIDS, sleeping babies should be on their back and sleep alone

**Keep cribs safe:**
-All cribs should meet the standards of the consumer product safety commission.
-Drop side cribs not recommended.
-Use a firm mattress, no bumpers, stuffed animals, heavy blankets, sheepskins or pillows in cribs.
-Never smoke around baby
-2nd hand smoke can make baby sick
-3rd hand smoke (poisons and chemicals left on your clothing or where someone smoked can also make baby sick)

**Never shake your baby. Babies brains are fragile. Be gentle with your baby.**

**Always use a babys car seat, and use it correctly**
-New American Academy of Pediatrics recommendation is to use your babys car seat rear facing for about 2 years and 30-40 pounds.
-Follow the instructions on the car seat for weight limits
-Always use safety straps on infant seats

**Bathing need only be done 3 times/week or as needed.**
-Sponge bathe until umbilical cord comes off. Check water temperature before placing baby in bath.
-Do not shake powder on baby
-Never let go of baby in bath

**Monitor your babys surroundings. Jewelry or any small item can be a choking hazard.**

Westchester Medical Center

Patient Name: ASTUDILLO TORRES, MARCIA
MRN: 4398482
FIN: 1050422897
DOB/Age: 7/28/1989 36 years
Admit Sex: Female
Admit: 9/27/2025
Disch:
Admitting:

## Emergency Documentation

### IMPORTANT INFORMATION: Assistance with a Substance Use Disorder

If you or someone you know needs care for a substance use disorder, the information below will help you understand the disease of addiction and available services

**What is a Substance Use Disorder**
A substance use disorder (SUD) is a chronic medical condition that can impact a person's health, relationships and their ability to meet major responsibilities at work, school, or home. Loved ones are often the first to recognize changes in an individual who is struggling with a substance use disorder. It can occur gradually over time or suddenly.

**1. Speak to your insurance company about your SUD treatment benefits.**
Insurers regulated by New York State are required to cover certain SUD services, when medically necessary. To find a family support navigator to help with navigating your insurance benefits, or to find other regional services, visit: https://www.oasas.ny.gov/CombatAddiction/RegionalSvc.cfm

- 14 days of in-network medically necessary inpatient services for the treatment of SUD, including detoxification, rehabilitation and residential treatment, without prior authorization or certification.
- Coverage for outpatient diagnosis and treatment of substance use disorder, without prior authorization, including detoxification, rehabilitation and opioid treatment program services.
- Up to twenty outpatient visits per policy or calendar year to an individual who identifies themselves as a family member of a person suffering from substance use disorder and who seeks treatment as a family member that is covered under that policy.
- A 5-day supply of medication to treat a substance use disorder, without prior authorization, for an emergency condition.
- Access to naloxone when prescribed to any person covered by the policy.

**2. Get assessed by a medical professional or a SUD treatment provider.**
Deciding to get help for a substance use disorder is the first step on the path toward recovery. There are many approaches to treating individuals with substance use disorder. Below are some common terms you may hear as you navigate the SUD treatment system.

- **Assessment**: Evaluates your level of addiction and determines the best treatment options for you, using an OASAS approved assessment tool.
- **Detoxification**: Generally, a 3-5 day service in a hospital or residential program with a physician and nurses monitoring you as you withdraw from drugs or alcohol. Medications may be used to alleviate uncomfortable side effects of withdrawal.
- **Rehabilitation**: About 10-25 day treatment that has many types of group and individual sessions, and materials to educate the patient about the disease of addiction. Also a 1-2 day family program for loved ones about the family disease of addiction and how to support each other in the recovery process.
- **Residential Treatment**: 60 - 180 days that combines three elements: stabilization, rehabilitation, and reintegration. The length of time in this level of care depends upon an individual's needs.
- **Outpatient**: Weekly sessions that combine individual, group and family counseling; can include medication-assisted treatment and random drug testing to evaluate compliance with treatment. Outpatient clinics are typically open 6-7 days a week and have evening hours.
- **Medication Assisted Treatment**: The use of behavioral therapy and medications that manage withdrawal symptoms, decrease cravings and prevent relapse to comprehensively address substance use, medical, psychiatric, and social problems.

**Westchester Medical Center**

| | | | |
|---|---|---|---|
| Patient Name: | ASTUDILLO TORRES, MARCIA | | |
| MRN: | 4398482 | Admit: | 9/27/2025 |
| FIN: | 1059422897 | Disch: | |
| DOB/Age: | 7/28/1989 36 years | Admitting: | |
| Admin Sex: | Female | | |

## *Emergency Documentation*

**3. Find a Program.**
To look for state certified outpatient or bedded programs with openings, go to: https://findaddictiontreatment.ny.gov/ Call or Text 1-877-8-HOPENY Text HOPENY (467369) 1-877-846-7369 Available 24 hours / 7 days

Confidentiality: Federal laws and regulations provide enhanced confidentiality protections for people who receive substance use disorder treatment. For this reason, programs and/or insurers cannot release information or respond to inquiries about a patient, without patient consent, or if another condition exists that waives the requirements of HIPAA and 42 CFR Part 2

**4. Stay Safe - Opioid Overdose Prevention**
Naloxone is a medication that can prevent an opioid/heroin overdose from becoming fatal. If you or a loved one suffers from opioid addiction, understanding how to use naloxone and having a naloxone kit available can be a life-saving intervention during a heroin or opioid overdose. To find an opioid overdose training program near you, visit New York State's Opioid Overdose Prevention Programs Directory at: http://www.health.ny.gov/diseases/aids/general/resources/oop_directory/index.htm

Not Ready for Treatment: Even if you aren't yet ready to seek professional care for a substance use disorder, it may be helpful to talk with a peer or learn about ways to keep yourself safe. To find a Peer or other services available in your region, go to: https://www.oasas.ny.gov/CombatAddiction/RegionalSvc.cfm

Harm Reduction Services: to find your nearest syringe exchange program (SEP), naloxone program, HCV testing and pharmacies for naloxone and syringes, please visit http://www.thepointny.org/SEPs provide comprehensive wraparound harm reduction services for people who use drugs.

**Resources:**

**New York State Office of Alcoholism and Substance Abuse Services** | www.oasas.ny.gov | 518-473-3460
www.oasas.ny.gov/combataddiction - Talk2Prevent.ny.gov
**The Partnership at Drugfree.org** | 855-378-4373
**Parents. The Antidrug** |www.theantidrug.com | 800-662-HELP
**American Council for Drug Education** |www.acde.org | 800-378-4435
**Families Against Drugs** |www.familiesagainstdrugs.org/
**Al-Anon and Alateen** | www.al-anon.alateen.org | 757-563-1600
**Nar-Anon** |www.nar-anon.org/
**Faces and Voices of Recovery** | www.facesandvoicesofrecovery.org | 202-737-0690 **SAMHSA's Center for Substance Abuse Treatment** www.samhsa.gov/about/csat.aspx | 240-276-1660 **Substance Abuse and Mental Health Services** | 877-SAMHSA-7
**National Institute on Drug Abuse** www.nida.nih.gov/nidahome.html | 800-662-HELP
**National Council on Alcohol and Drug Dependence** | www.ncadd.org | 800-NCACALL

**211 New York**

**211 New York** is a free, confidential service that connects people across New York State to local resources for **food, housing, utilities, health care, mental health, substance use, elder care, disaster assistance, and more.** Help is available 24/7 by phone, text, or online

Call/text 211 or choose one of the following **designated contact information listed below for your county** to get localized support:

- **Dutchess, Orange, Putnam, Rockland, Sullivan, Ulster, Westchester** | 800-899-1479 | Website: 211hudsonvalley.org

## Emergency Documentation

- Cattaraugus, Chautauqua, Erie, Genesee, Niagara, Orleans, Wyoming | 888-696-9211 | Website: 211wny.org
- Cayuga, Livingston, Monroe, Ontario, Seneca, Wayne| 877-356-9211 | Website: 211lifeline.org
- Allegany, Chemung, Schuyler, Steuben, Yates | 800-346-2211 | Website: 211helpline.org
- Cortland, Tompkins | 877-211-8667 | Website 211tompkins.org
- Jefferson, Lewis, Onondaga, Oswego, St. Lawrence | 844-245-1922 | Website: 211cny.org
- Broome, Chenango, Delaware, Otsego, Tioga | 800-901-2180 | Website: helpme211.org
- Herkimer, Madison, Oneida | 844-342-5211 | Website 211midyork.org
- Clinton, Essex, Franklin | 888-774-0289 | Website: 211adk.org
- Albany, Columbia, Fulton, Greene, Hamilton, Montgomery, Rensselaer, Saratoga, Schenectady, Schoharie, Warren, Washington 888-366-3211 | Website 211neny.org
- Nassau, Suffolk | 888-774-7633 | Website. 211li.org
- Bronx, Kings, New York, Queens, Richmond | 212 639 9675 | Website: nyc.gov/311

**UNITED STATES DEPARTMENT OF JUSTICE**
**EXECUTIVE OFFICE FOR IMMIGRATION REVIEW**

## Payment Receipt

A payment has been processed for the following case before the Executive Office for Immigration Review.

For cases before the Immigration Court, please contact the Court that is currently hearing your case for questions regarding payment. For cases before the Board of Immigration Appeals (BIA), please contact the BIA Clerk's Office for questions regarding payment at (703) 605-1007.

A copy of this receipt must be included with the application, motion, or appeal that is filed with the Immigration Court or the BIA Clerk's Office. Failure to include a receipt showing proof of payment will result in rejection of the filing.

**A-Number:** 226-088-780

**Payment Tracking ID:** 27S0IJO7

**Payment Processed On:** 10/3/2025 12:52:50 PM EST

**Filing Type:** BIA - Motion (new filing)

**Payment Type:** ACH

**Payment Amount:** $1,010.00

Save or print this receipt immediately. A copy will not be sent via email. The tracking ID is required to retrieve a duplicate receipt.

*Please note there is an **annual fee** for all asylum applications, which is due on the anniversary of each calendar year that an alien's asylum application remains pending; no fee-waiver or reduction in fee is permitted. **This fee must be paid timely**; failure to pay within 30 days of the anniversary due date will likely result in pretermission of the asylum application and an order of removal. This will be the only notice that the alien will receive regarding this annual payment requirement. Payment of this fee can be made at https://epay.eoir.justice.gov/index.

Current annual fee amounts can be found at www.justice.gov/eoir/types-appeals-motions-and-required-fees.

# EXHIBIT "D"

# CERTIFICATE OF SERVICE

A# 226-088-780/781

| | | |
|---|---|---|
| In the Matters of: | ) | |
| ASTUDILLO TORRES, Marcia Elizabeth, and TORRES ASTUDILLO, Paulo Andres | ) | File No. A# 226-088-780/781 |

I hereby certify that I have served a copy of the attached **Motion for Emergency Stay of Removal in** the above-referenced case upon the Board of Immigration Appeals by:

_______eService
___X___personal service in court
_______mailing a copy via federal express, to the following address:
_______mailing a copy by first class mail, postage prepaid, to the following address:

**Board of Immigration Appeals**
**Office of the Chief Clerk**
**5107 Leesburg Pike, Suite 2000**
**Falls Church, VA 22041**

Dated: October 3, 2025

Andrea C. Soto, Esq
Attorney for Respondents

Clerk's Office
OCT 03 2025
Received
BIA

# CERTIFICATE OF SERVICE

A# 226-088-780/781

| | | |
|---|---|---|
| In the Matters of: ASTUDILLO TORRES, Marcia Elizabeth, and TORRES ASTUDILLO, Paulo Andres | ) | File No. A# 226-088-780/781 |

I hereby certify that I have served a copy of the attached **Motion for Emergency Stay of Removal in** the above-referenced case upon the Chief Counsel by:

__X___eService
______personal service in court
______mailing a copy via federal express, to the following address:
______mailing a copy by first class mail, postage prepaid, to the following address:

**U.S. Department of Homeland Security**
**Office of the District Counsel**
**26 Federal Plaza, Room 1130**
**New York, NY 10278**

Dated: October 3, 2025

Andrea C. Soto, Esq
Attorney for Respondents

U.S. Department of Justice
Executive Office for Immigration Review
*Board of Immigration Appeals*

OMB#1125-0005
**Notice of Entry of Appearance as Attorney or Representative Before the Board of Immigration Appeals**

(Type or Print)
**NAME AND ADDRESS OF REPRESENTED PARTY**

PAULO A TORRES ASTUDILLO
(First) (Middle Initial) (Last)

76 PUTNAM AVENUE
(Number and Street) (Apt. No.)

PORTCHESTER NY 10573
(City) (State) (Zip Code)

**A-NUMBER**
(Provide Alien ("A") number of the party represented)
226-088-781

USCIS Visa Appeal (Provide beneficiary name and A number)

Fine (Provide fine number)

Disciplinary case (Provide docket number)

**Attorney or Representative (please check one of the following):**

☑ I am an attorney eligible to practice law in, and a member in good standing of, the bar of the highest court(s) of the following states(s), possession(s), territory(ies), commonwealth(s), or the District of Columbia (use additional space on reverse side if necessary), and I am not subject to any order disbarring, suspending, enjoining, restraining or otherwise restricting me in the practice of law in any jurisdiction (if subject to such an order, do not check this box and explain on reverse).

**Full Name of Court** New York Second Division **Bar Number (if applicable)** 5535802

☐ I am a representative accredited to appear before the Executive Office for Immigration Review as defined in 8 C.F.R. § 1292.1(a)(4) with the following recognized organization:

☐ I am a law student or law graduate of an accredited U.S. law school as defined in 8 C.F.R. § 1292.1(a)(2).
☐ I am a reputable individual as defined in 8 C.F.R. § 1292.1(a)(3) and I have included a statement demonstrating that I meet the required criteria.
☐ I am an accredited foreign government official, as defined in 8 C.F.R. § 1291.1(a)(5), from ____________ (country).
☐ I am a person who was authorized to practice on December 23, 1952, under 8 C.F.R. § 1292.1(b).

Clerk's Office
OCT 03 2025
Received

**Attorney or Representative (please check one of the following):**

☑ I hereby enter my appearance as attorney or representative for, and at the request of, the party named above.
☐ EOIR has ordered the provision of a Qualified Representative for the party named above and I appear in that capacity.

I have read and understand the statements provided on the reverse side of this form that set forth the regulations and conditions governing appearances and representations before the Board of Immigration Appeals. By signing this form, I consent to publication of my name and any findings of misconduct by EOIR, should I become subject to any public discipline by EOIR pursuant to the rules and procedures at 8 C.F.R. 1003.101 *et seq.* I declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct.

| SIGNATURE OF ATTORNEY OR REPRESENTATIVE | EOIR ID NUMBER | DATE |
|---|---|---|
| X [signature] | YY923563 | 10/03/2025 |

**NAME OF ATTORNEY OR REPRESENTATIVE, ADDRESS, FAX & PHONE NUMBERS, & EMAIL ADDRESS**

Name: ANDREA C SOTO
(First) (Middle Initial) (Last)

Address: 445 HAMILTON AVENUE 407
(Number and Street) (Suite)

Law Firm: SOTO LAW, PLLC

WHITE PLAINS NY 10601
(City) (State) (Zip Code)

Telephone: 914-290-4900 Facsimile: 914-898-9100 Email: ASOTO@ANDREASOTOLAW.COM

☐ Check here if new address

**Indicate Type of Appearance:** [✓] Primary Attorney/Representative [ ] Non-Primary Attorney/Representative

Note: You must designate primary or non-primary. Only the primary attorney/representative will receive mailings from the BIA. All attorneys/ representatives regardless of type of appearance are practitioners of record and are individually responsible as representatives for the respondent. Circumstances may arise that require the BIA to designate a primary and/or switch service of mailings from the primary to a non-primary.

I am providing pro bono representation. Check one: [ ] yes [✓] no

**Proof of Service**

I (Name) ANDREA C. SOTO provided a copy of this Form EOIR-27 on (Date) 10/03/2025 to the

[✓] DHS (U.S. Immigration and Customs Enforcement – ICE) at E-SERVICE

[ ] DHS (U.S. Citizenship and Immigration Services – USCIS) at

[ ] EOIR Disciplinary Counsel at

[ ] No service needed. I electronically filed this document, and the opposing party is participating in ECAS.

X [signature]
Signature of Person Serving

**APPEARANCES** - A practitioner of record is authorized and required to appear on behalf of a respondent, to file all documents on behalf of a respondent, and to accept service of process of all documents filed in the proceedings before the Board of Immigration Appeals (BIA). *See* 8 C.F.R. §§ 1003.38(g)(1)(ii), 1292.5(a). To perform the functions of and become the practitioner of record, the practitioner must file a separate Form EOIR-27 for each represented party in each appeal or motion before the BIA (8 C.F.R. § 1003.2(g)(1), 1003.3(a)(3), 1003.38(g)(1)), even though the practitioner may have appeared in the case before the Immigration Judge or U.S. Citizenship and Immigration Services. For information on how to file a Form EOIR-27 with the BIA, see the BIA Practice Manual at www.justice.gov/eoir. If information is omitted from the Form EOIR-27 or is not properly completed, the appearance may not be recognized, and the accompanying filing may be rejected. When an appearance as a practitioner of record is made by a person acting in a representative capacity, his/her personal appearance or signature constitutes a representation that, under 8 C.F.R. part 1003, he/she is authorized and qualified to represent individuals and will comply with the EOIR Rules of Professional Conduct in 8 C.F.R. § 1003.102. Thereafter, substitution or withdrawal may be permitted upon approval by the BIA of a request of the practitioner of record in accordance with *Matter of Rosales*, 19 I&N Dec. 655 (1988). Appearances for limited purposes other than for document assistance to an unrepresented or *pro se* respondent are not permitted. 8 C.F.R. § 1003.2(g)(1), 1003.38(g)(2); *Matter of Velasquez*, 19 I&N Dec. 377, 384 (BIA 1986). A Form EOIR-60, not a Form EOIR-27, is required for the entry of a limited appearance for document assistance on an appeal, brief, motion, or other document. Note: Attorneys and Accredited Representatives (with full accreditation) must register with the EOIR eRegistry to practice before the BIA. 8 C.F.R. § 1292.1(f). Registration must be completed online at www.justice.gov/eoir. Attorneys and Accredited Representatives (with full accreditation) must first update their address in eRegistry before filing a Form EOIR-27 that reflects a new address.

**FREEDOM OF INFORMATION ACT** - This form may not be used to request records under the Freedom of Information Act (FOIA) or the Privacy Act. *See* 28 C.F.R. § 16.1-16.11 and appendices. For information about FOIA requests, see How to File a Freedom of Information Act (FOIA) Request With the Executive Office for Immigration Review, at https://www.justice.gov/eoir.

**PRIVACY ACT NOTICE** - The information requested on this form is authorized by 8 U.S.C. § 1362 and 8 C.F.R. § 1003.3 in order to enter an appearance to represent a party before the BIA. The information you provide is mandatory and required to enter an appearance. Failure to provide the requested information will result in an inability to represent a party or receive notices of actions in a proceeding. EOIR may share this information with others in accordance with approved routine uses described in EOIR's system of records notice, EOIR-001, Records and Management Information System, 69 Fed. Reg. 26,179 (May 11, 2004), and EOIR-003, Practitioner Complaint-Disciplinary Files, 64 Fed. Reg. 49237 (September 1999), or their successors. Furthermore, the submission of this form acknowledges that an attorney or representative will be subject to the disciplinary rules and procedures at 8 C.F.R. § 1003.101 et seq., including, pursuant to 8 C.F.R. §§ 292.3(h)(3), 1003.108(c), publication of the name of the attorney or representative and findings of misconduct should the attorney or representative be subject to any public discipline by EOIR.

**CASES BEFORE EOIR** - Automated information about cases before EOIR is available by calling (800) 898-7180 or (304) 625-2050 or by checking online at https://acis.eoir.justice.gov.

**ADDITIONAL INFORMATION:**

Clerk's Office
OCT 03 2025
Received
BIA

**PAPERWORK REDUCTION ACT NOTICE** - A person is not required to respond to a collection of information unless it displays a valid OMB control number. We try to create forms and instructions that are accurate, can be easily understood, and which impose minimal burden on you to provide us with information. The estimated average time to complete this form is six (6) minutes. If you have comments regarding the accuracy of this estimate, or suggestions for making this form simpler, you can write to the Executive Office for Immigration Review, Office of the General Counsel, 5107 Leesburg Pike, Suite 2600, Falls Church, Virginia 22041.

U.S. Department of Justice
Executive Office for Immigration Review
*Board of Immigration Appeals*

OMB#1125-0005
**Notice of Entry of Appearance as Attorney or Representative Before the Board of Immigration Appeals**

(Type or Print)
**NAME AND ADDRESS OF REPRESENTED PARTY**

MARCIA E ASTUDILLO TORRES
(First) (Middle Initial) (Last)

76 PUTNAM AVENUE
(Number and Street) (Apt. No.)

PORTCHESTER NY 10573
(City) (State) (Zip Code)

**A-NUMBER**
(Provide Alien ("A") number of the party represented)
226-088-780

USCIS Visa Appeal (Provide beneficiary name and A number)

Fine (Provide fine number)

Disciplinary case (Provide docket number)

**Attorney or Representative (please check one of the following):**

- [x] I am an attorney eligible to practice law in, and a member in good standing of, the bar of the highest court(s) of the following states(s), possession(s), territory(ies), commonwealth(s), or the District of Columbia (use additional space on reverse side if necessary), and I am not subject to any order disbarring, suspending, enjoining, restraining or otherwise restricting me in the practice of law in any jurisdiction (if subject to such an order, do not check this box and explain on reverse).

**Full Name of Court** New York Second Division **Bar Number (if applicable)** 5535802

- [ ] I am a representative accredited to appear before the Executive Office for Immigration Review as defined in 8 C.F.R. § 1292.1(a)(4) with the following recognized organization:

Clerk's Office
OCT 03 2025
BIA

- [ ] I am a law student or law graduate of an accredited U.S. law school as defined in 8 C.F.R. § 1292.1(a)(2).
- [ ] I am a reputable individual as defined in 8 C.F.R. § 1292.1(a)(3) and I have included a statement demonstrating that I meet the required criteria.
- [ ] I am an accredited foreign government official, as defined in 8 C.F.R. § 1291.1(a)(5), from ______ (country).
- [ ] I am a person who was authorized to practice on December 23, 1952, under 8 C.F.R. § 1292.1(b).

**Attorney or Representative (please check one of the following):**

- [x] I hereby enter my appearance as attorney or representative for, and at the request of, the party named above.
- [ ] EOIR has ordered the provision of a Qualified Representative for the party named above and I appear in that capacity.

I have read and understand the statements provided on the reverse side of this form that set forth the regulations and conditions governing appearances and representations before the Board of Immigration Appeals. By signing this form, I consent to publication of my name and any findings of misconduct by EOIR, should I become subject to any public discipline by EOIR pursuant to the rules and procedures at 8 C.F.R. 1003.101 *et seq.* I declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct.

| SIGNATURE OF ATTORNEY OR REPRESENTATIVE | EOIR ID NUMBER | DATE |
|---|---|---|
| X [signature] | YY923563 | 10/03/2025 |

**NAME OF ATTORNEY OR REPRESENTATIVE, ADDRESS, FAX & PHONE NUMBERS, & EMAIL ADDRESS**

Name: ANDREA C SOTO
(First) (Middle Initial) (Last)

Address: 445 HAMILTON AVENUE 407
(Number and Street) (Suite)

Law Firm: SOTO LAW, PLLC

WHITE PLAINS NY 10601
(City) (State) (Zip Code)

Telephone: 914-290-4900 Facsimile: 914-898-9100 Email: ASOTO@ANDREASOTOLAW.COM

- [ ] Check here if new address

**Indicate Type of Appearance:** ☑ Primary Attorney/Representative ☐ Non-Primary Attorney/Representative

Note: You must designate primary or non-primary. Only the primary attorney/representative will receive mailings from the BIA. All attorneys/ representatives regardless of type of appearance are practitioners of record and are individually responsible as representatives for the respondent. Circumstances may arise that require the BIA to designate a primary and/or switch service of mailings from the primary to a non-primary.

I am providing pro bono representation. Check one: ☐ yes ☑ no

**Proof of Service**

I (Name) ANDREA C. SOTO provided a copy of this Form EOIR-27 on (Date) 10/03/2025 to the

☑ DHS (U.S. Immigration and Customs Enforcement – ICE) at E-Service

☐ DHS (U.S. Citizenship and Immigration Services – USCIS) at

☐ EOIR Disciplinary Counsel at

☐ No service needed. I electronically filed this document, and the opposing party is participating in ECAS.

X [signature]
Signature of Person Serving

**APPEARANCES** - A practitioner of record is authorized and required to appear on behalf of a respondent, to file all documents on behalf of a respondent, and to accept service of process of all documents filed in the proceedings before the Board of Immigration Appeals (BIA). *See* 8 C.F.R. §§ 1003.38(g)(1)(ii), 1292.5(a). To perform the functions of and become the practitioner of record, the practitioner must file a separate Form EOIR-27 for each represented party in each appeal or motion before the BIA (8 C.F.R. § 1003.2(g)(1), 1003.3(a)(3), 1003.38(g)(1)), even though the practitioner may have appeared in the case before the Immigration Judge or U.S. Citizenship and Immigration Services. For information on how to file a Form EOIR-27 with the BIA, see the BIA Practice Manual at www.justice.gov/eoir. If information is omitted from the Form EOIR-27 or is not properly completed, the appearance may not be recognized, and the accompanying filing may be rejected. When an appearance as a practitioner of record is made by a person acting in a representative capacity, his/her personal appearance or signature constitutes a representation that, under 8 C.F.R. part 1003, he/she is authorized and qualified to represent individuals and will comply with the EOIR Rules of Professional Conduct in 8 C.F.R. § 1003.102. Thereafter, substitution or withdrawal may be permitted upon approval by the BIA of a request of the practitioner of record in accordance with *Matter of Rosales*, 19 I&N Dec. 655 (1988). Appearances for limited purposes other than for document assistance to an unrepresented or *pro se* respondent are not permitted. 8 C.F.R. § 1003.2(g)(1), 1003.38(g)(2); *Matter of Velasquez*, 19 I&N Dec. 377, 384 (BIA 1986). A Form EOIR-60, not a Form EOIR-27, is required for the entry of a limited appearance for document assistance on an appeal, brief, motion, or other document. Note: Attorneys and Accredited Representatives (with full accreditation) must register with the EOIR eRegistry to practice before the BIA. 8 C.F.R. § 1292.1(f). Registration must be completed online at www.justice.gov/eoir. Attorneys and Accredited Representatives (with full accreditation) must first update their address in eRegistry before filing a Form EOIR-27 that reflects a new address.

**FREEDOM OF INFORMATION ACT** - This form may not be used to request records under the Freedom of Information Act (FOIA) or the Privacy Act. *See* 28 C.F.R. § 16.1-16.11 and appendices. For information about FOIA requests, see How to File a Freedom of Information Act (FOIA) Request With the Executive Office for Immigration Review, at https://www.justice.gov/eoir.

**PRIVACY ACT NOTICE** - The information requested on this form is authorized by 8 U.S.C. § 1362 and 8 C.F.R. § 1003.3 in order to enter an appearance to represent a party before the BIA. The information you provide is mandatory and required to enter an appearance. Failure to provide the requested information will result in an inability to represent a party or receive notices of actions in a proceeding. EOIR may share this information with others in accordance with approved routine uses described in EOIR's system of records notice, EOIR-001, Records and Management Information System, 69 Fed. Reg. 26,179 (May 11, 2004), and EOIR-003, Practitioner Complaint-Disciplinary Files, 64 Fed. Reg. 49237 (September 1999), or their successors. Furthermore, the submission of this form acknowledges that an attorney or representative will be subject to the disciplinary rules and procedures at 8 C.F.R. § 1003.101 et seq., including, pursuant to 8 C.F.R. §§ 292.3(h)(3), 1003.108(c), publication of the name of the attorney or representative and findings of misconduct should the attorney or representative be subject to any public discipline by EOIR.

**CASES BEFORE EOIR** - Automated information about cases before EOIR is available by calling (800) 898-7180 or (304) 625-2050 or by checking online at https://acis.eoir.justice.gov.

**ADDITIONAL INFORMATION:**

Clerk's Office
OCT 03 2025
Received
BIA

**PAPERWORK REDUCTION ACT NOTICE** - A person is not required to respond to a collection of information unless it displays a valid OMB control number. We try to create forms and instructions that are accurate, can be easily understood, and which impose minimal burden on you to provide us with information. The estimated average time to complete this form is six (6) minutes. If you have comments regarding the accuracy of this estimate, or suggestions for making this form simpler, you can write to the Executive Office for Immigration Review, Office of the General Counsel, 5107 Leesburg Pike, Suite 2600, Falls Church, Virginia 22041.

# QR Code Cover Sheet 2.1

TayeH

MOTIONS

Cluster 1

Merit Appeal

Supporting - Case Notices

EOIR-27, Appearance as Attorney or Representative

**UNITED STATES DEPARTMENT OF JUSTICE**
**EXECUTIVE OFFICE FOR IMMIGRATION REVIEW**

## Payment Receipt

A payment has been processed for the following case before the Executive Office for Immigration Review.

For cases before the Immigration Court, please contact the Court that is currently hearing your case for questions regarding payment. For cases before the Board of Immigration Appeals (BIA), please contact the BIA Clerk's Office for questions regarding payment at (703) 605-1007.

A copy of this receipt must be included with the application, motion, or appeal that is filed with the Immigration Court or the BIA Clerk's Office. Failure to include a receipt showing proof of payment will result in rejection of the filing.

**A-Number:** 226-088-780

**Payment Tracking ID:** 27S0IJO7

**Payment Processed On:** 10/3/2025 12:52:50 PM EST

**Filing Type:** BIA - Motion (new filing)

**Payment Type:** ACH

**Payment Amount:** $1,010.00

Clerk's Office
OCT 03 2025
Received
BIA

Save or print this receipt immediately. A copy will not be sent via email. The tracking ID is required to retrieve a duplicate receipt.

*Please note there is an **annual fee** for all asylum applications, which is due on the anniversary of each calendar year that an alien's asylum application remains pending; no fee-waiver or reduction in fee is permitted. **This fee must be paid timely**; failure to pay within 30 days of the anniversary due date will likely result in pretermission of the asylum application and an order of removal. This will be the only notice that the alien will receive regarding this annual payment requirement. Payment of this fee can be made at https://epay.eoir.justice.gov/index.

Current annual fee amounts can be found at www.justice.gov/eoir/types-appeals-motions-and-required-fees.

**U.S. Department of Justice**
Executive Office for Immigration Review
*Board of Immigration Appeals*

OMB#1125-0005
**Notice of Entry of Appearance as Attorney or Representative Before the Board of Immigration Appeals**

(Type or Print)
**NAME AND ADDRESS OF REPRESENTED PARTY**

MARCIA E ASTUDILLO TORRES
(First) (Middle Initial) (Last)

76 PUTNAM AVENUE
(Number and Street) (Apt. No.)

PORTCHESTER NY 10573
(City) (State) (Zip Code)

**A-NUMBER**
(Provide Alien ("A") number of the party represented)
226-088-780

USCIS Visa Appeal (Provide beneficiary name and A number)

Fine (Provide fine number)

Disciplinary case (Provide docket number)

**Attorney or Representative (please check one of the following):**

☑ I am an attorney eligible to practice law in, and a member in good standing of, the bar of the highest court(s) of the following states(s), possession(s), territory(ies), commonwealth(s), or the District of Columbia (use additional space on reverse side if necessary), and I am not subject to any order disbarring, suspending, enjoining, restraining or otherwise restricting me in the practice of law in any jurisdiction (if subject to such an order, do not check this box and explain on reverse).

**Full Name of Court** New York Second Division **Bar Number (if applicable)** 5535802

☐ I am a representative accredited to appear before the Executive Office for Immigration Review as defined in 8 C.F.R. § 1292.1(a)(4) with the following recognized organization:

☐ I am a law student or law graduate of an accredited U.S. law school as defined in 8 C.F.R. § 1292.1(a)(2).
☐ I am a reputable individual as defined in 8 C.F.R. § 1292.1(a)(3) and I have included a statement demonstrating that I meet the required criteria.
☐ I am an accredited foreign government official, as defined in 8 C.F.R. § 1291.1(a)(5), from ____________ (country).
☐ I am a person who was authorized to practice on December 23, 1952, under 8 C.F.R. § 1292.1(b).

Clerk's Office
OCT 03 2025
Received
BIA

**Attorney or Representative (please check one of the following):**

☑ I hereby enter my appearance as attorney or representative for, and at the request of, the party named above.
☐ EOIR has ordered the provision of a Qualified Representative for the party named above and I appear in that capacity.

I have read and understand the statements provided on the reverse side of this form that set forth the regulations and conditions governing appearances and representations before the Board of Immigration Appeals. By signing this form, I consent to publication of my name and any findings of misconduct by EOIR, should I become subject to any public discipline by EOIR pursuant to the rules and procedures at 8 C.F.R. 1003.101 *et seq.* I declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct.

| SIGNATURE OF ATTORNEY OR REPRESENTATIVE | EOIR ID NUMBER | DATE |
|---|---|---|
| X [signature] | YY923563 | 10/03/2025 |

**NAME OF ATTORNEY OR REPRESENTATIVE, ADDRESS, FAX & PHONE NUMBERS, & EMAIL ADDRESS**

Name: ANDREA C SOTO
(First) (Middle Initial) (Last)

Address: 445 HAMILTON AVENUE 407
(Number and Street) (Suite)

Law Firm: SOTO LAW, PLLC

WHITE PLAINS NY 10601
(City) (State) (Zip Code)

Telephone: 914-290-4900 Facsimile: 914-898-9100 Email: ASOTO@ANDREASOTOLAW.COM

☐ Check here if new address

**Indicate Type of Appearance:** ☑ Primary Attorney/Representative ☐ Non-Primary Attorney/Representative

Note: You must designate primary or non-primary. Only the primary attorney/representative will receive mailings from the BIA. All attorneys/representatives regardless of type of appearance are practitioners of record and are individually responsible as representatives for the respondent. Circumstances may arise that require the BIA to designate a primary and/or switch service of mailings from the primary to a non-primary.

I am providing pro bono representation. Check one: ☐ yes ☑ no

**Proof of Service**

I (Name) ANDREA C. SOTO provided a copy of this Form EOIR-27 on (Date) 10/03/2025 to the

☑ DHS (U.S. Immigration and Customs Enforcement – ICE) at E-Service

☐ DHS (U.S. Citizenship and Immigration Services – USCIS) at ______

☐ EOIR Disciplinary Counsel at ______

☐ No service needed. I electronically filed this document, and the opposing party is participating in ECAS.

X ______
Signature of Person Serving

**APPEARANCES** - A practitioner of record is authorized and required to appear on behalf of a respondent, to file all documents on behalf of a respondent, and to accept service of process of all documents filed in the proceedings before the Board of Immigration Appeals (BIA). *See* 8 C.F.R. §§ 1003.38(g)(1)(ii), 1292.5(a). To perform the functions of and become the practitioner of record, the practitioner must file a separate Form EOIR-27 for each represented party in each appeal or motion before the BIA (8 C.F.R. § 1003.2(g)(1), 1003.3(a)(3), 1003.38(g)(1)), even though the practitioner may have appeared in the case before the Immigration Judge or U.S. Citizenship and Immigration Services. For information on how to file a Form EOIR-27 with the BIA, see the BIA Practice Manual at www.justice.gov/eoir. If information is omitted from the Form EOIR-27 or is not properly completed, the appearance may not be recognized, and the accompanying filing may be rejected. When an appearance as a practitioner of record is made by a person acting in a representative capacity, his/her personal appearance or signature constitutes a representation that, under 8 C.F.R. part 1003, he/she is authorized and qualified to represent individuals and will comply with the EOIR Rules of Professional Conduct in 8 C.F.R. § 1003.102. Thereafter, substitution or withdrawal may be permitted upon approval by the BIA of a request of the practitioner of record in accordance with *Matter of Rosales*, 19 I&N Dec. 655 (1988). Appearances for limited purposes other than for document assistance to an unrepresented or *pro se* respondent are not permitted. 8 C.F.R. § 1003.2(g)(1), 1003.38(g)(2); *Matter of Velasquez*, 19 I&N Dec. 377, 384 (BIA 1986). A Form EOIR-60, not a Form EOIR-27, is required for the entry of a limited appearance for document assistance on an appeal, brief, motion, or other document. Note: Attorneys and Accredited Representatives (with full accreditation) must register with the EOIR eRegistry to practice before the BIA. 8 C.F.R. § 1292.1(f). Registration must be completed online at www.justice.gov/eoir. Attorneys and Accredited Representatives (with full accreditation) must first update their address in eRegistry before filing a Form EOIR-27 that reflects a new address.

**FREEDOM OF INFORMATION ACT** - This form may not be used to request records under the Freedom of Information Act (FOIA) or the Privacy Act. *See* 28 C.F.R. § 16.1-16.11 and appendices. For information about FOIA requests, see How to File a Freedom of Information Act (FOIA) Request With the Executive Office for Immigration Review, at https://www.justice.gov/eoir.

**PRIVACY ACT NOTICE** - The information requested on this form is authorized by 8 U.S.C. § 1362 and 8 C.F.R. § 1003.3 in order to enter an appearance to represent a party before the BIA. The information you provide is mandatory and required to enter an appearance. Failure to provide the requested information will result in an inability to represent a party or receive notices of actions in a proceeding. EOIR may share this information with others in accordance with approved routine uses described in EOIR's system of records notice, EOIR-001, Records and Management Information System, 69 Fed. Reg. 26,179 (May 11, 2004), and EOIR-003, Practitioner Complaint-Disciplinary Files, 64 Fed. Reg. 49237 (September 1999), or their successors. Furthermore, the submission of this form acknowledges that an attorney or representative will be subject to the disciplinary rules and procedures at 8 C.F.R. § 1003.101 et seq., including, pursuant to 8 C.F.R. §§ 292.3(h)(3), 1003.108(c), publication of the name of the attorney or representative and findings of misconduct should the attorney or representative be subject to any public discipline by EOIR.

**CASES BEFORE EOIR** - Automated information about cases before EOIR is available by calling (800) 898-7180 or (304) 625-2050 or by checking online at https://acis.eoir.justice.gov.

**ADDITIONAL INFORMATION:**

Clerk's Office
OCT 03 2025
Received
BIA

**PAPERWORK REDUCTION ACT NOTICE** - A person is not required to respond to a collection of information unless it displays a valid OMB control number. We try to create forms and instructions that are accurate, can be easily understood, and which impose minimal burden on you to provide us with information. The estimated average time to complete this form is six (6) minutes. If you have comments regarding the accuracy of this estimate, or suggestions for making this form simpler, you can write to the Executive Office for Immigration Review, Office of the General Counsel, 5107 Leesburg Pike, Suite 2600, Falls Church, Virginia 22041.

**UNITED STATES DEPARTMENT OF JUSTICE**
**EXECUTIVE OFFICE FOR IMMIGRATION REVIEW**

## Payment Receipt

A payment has been processed for the following case before the Executive Office for Immigration Review.

For cases before the Immigration Court, please contact the Court that is currently hearing your case for questions regarding payment. For cases before the Board of Immigration Appeals (BIA), please contact the BIA Clerk's Office for questions regarding payment at (703) 605-1007.

A copy of this receipt must be included with the application, motion, or appeal that is filed with the Immigration Court or the BIA Clerk's Office. Failure to include a receipt showing proof of payment will result in rejection of the filing.

**A-Number:** 226-088-780

**Payment Tracking ID:** 27S0IJO7

**Payment Processed On:** 10/3/2025 12:52:50 PM EST

**Filing Type:** BIA - Motion (new filing)

**Payment Type:** ACH

**Payment Amount:** $1,010.00

Clerk's Office
OCT 03 2025
Received
BIA

Save or print this receipt immediately. A copy will not be sent via email. The tracking ID is required to retrieve a duplicate receipt.

*Please note there is an **annual fee** for all asylum applications, which is due on the anniversary of each calendar year that an alien's asylum application remains pending; no fee-waiver or reduction in fee is permitted. **This fee must be paid timely**; failure to pay within 30 days of the anniversary due date will likely result in pretermission of the asylum application and an order of removal. This will be the only notice that the alien will receive regarding this annual payment requirement. Payment of this fee can be made at https://epay.eoir.justice.gov/index.

Current annual fee amounts can be found at www.justice.gov/eoir/types-appeals-motions-and-required-fees.

**U.S. Department of Justice**

Executive Office for Immigration Review

*Board of Immigration Appeals*
*Office of the Clerk*

*5107 Leesburg Pike, Suite 2000*
*Falls Church, Virginia 22041*

**Soto, Andrea**
**Soto Law, PLLC**
**455 Hamilton Avenue Suite 407**
**White Plains NY 10601**

**DHS/ICE Office of Chief Counsel – NYB**
**26 Federal Plaza, 11th Floor**
**New York NY 10278**

**Name: ASTUDILLO TORRES, MARCIA E A 226-088-780**

**Riders: 226-088-781**

**Date of this Notice: 9/23/2025**

Enclosed is a copy of the Board's decision and order in the above-referenced case.

Sincerely,

John Seiler
Acting Chief Clerk

Enclosure

Userteam: Docket

**U.S. Department of Justice**

Executive Office for Immigration Review

*Board of Immigration Appeals*
*Office of the Clerk*

*5107 Leesburg Pike, Suite 2000*
*Falls Church, Virginia 22041*

**ASTUDILLO TORRES, MARCIA ELIZA**
**76 Putnam Avenue**
**Port Chester NY 10573**

**DHS/ICE Office of Chief Counsel – NYB**
**26 Federal Plaza, 11th Floor**
**New York NY 10278**

**Name: ASTUDILLO TORRES, MARCIA E A 226-088-780**

**Riders: 226-088-781**

**Date of this Notice: 9/23/2025**

Enclosed is a copy of the Board's decision in the above-referenced case. This copy is being provided to you as a courtesy. Your attorney or representative has been served with this decision pursuant to 8 C.F.R. § 1292.5(a). If the attached decision orders that you be removed from the United States or affirms an Immigration Judge's decision ordering that you be removed, any petition for review of the attached decision must be filed with and received by the appropriate court of appeals within 30 days of the date of the decision.

Sincerely,

John Seiler
Acting Chief Clerk

Enclosure

Userteam: Docket

**NOT FOR PUBLICATION**

U.S. Department of Justice
Executive Office for Immigration Review
Board of Immigration Appeals

MATTER OF:

Marcia Elizabeth ASTUDILLO TORRES, A226-088-780
Paulo Andres TORRES ASTUDILLO, A226-088-781

Respondents

**FILED**
Sep 23, 2025

ON BEHALF OF RESPONDENTS: Andrea Soto, Esquire

IN REMOVAL PROCEEDINGS
On Appeal from a Decision of the Immigration Court, New York, NY

Before: Mann, Appellate Immigration Judge

MANN, Appellate Immigration Judge

The respondents,[1] natives and citizens of Ecuador, have appealed from the Immigration Judge's April 29, 2025, decision denying the respondent's applications for asylum and withholding of removal under sections 208(b)(1)(A) and 241(b)(3)(A) of the Immigration and Nationality Act (INA), 8 U.S.C. §§ 1158(b)(1)(A), 1231(b)(3)(A) as well as his request for protection under the regulations implementing the Convention Against Torture ("CAT").[2] The respondents' appeal will be dismissed.

We review findings of fact determined by an Immigration Judge, including credibility findings, under a "clearly erroneous" standard. 8 C.F.R. § 1003.1(d)(3)(i). We review questions of law, discretion, and judgment, and all other issues in appeals from decisions of Immigration Judges de novo. 8 C.F.R. § 1003.1(d)(3)(ii).

---

[1] The respondents are an adult female, the lead respondent (A226-088-780), and her minor child. The child is a derivative beneficiary of the adult female's application for asylum. *See Matter of A-K-*, 24 I&N Dec. 275, 279 (BIA 2007) (providing for derivative asylum eligibility but not derivative withholding of removal benefits). Hereinafter, all references to the respondent related to the lead respondent, the adult female.

[2] The Convention Against Torture and Other Cruel, Inhuman or Degrading Treatment or Punishment, Dec. 10, 1984, S. Treaty Doc. No. 100-20, 1465 U.N.T.S. 85 (entered into force for United States Nov. 20, 1994). 8 C.F.R. §§ 1208.16(c)-1208.18.

(continued…)

The respondent fears criminals who attempted to collect a debt that was incurred by her former partner (IJ at 3; Tr. at 44-45). The respondent also fears criminals who were calling her and questioning her about her son, the rider respondent (IJ at 2-3; Tr. at 43-35). The respondent testified that her son also observed "someone" standing by the bus station outside of the building where he practiced sports and that her son "felt" that the person was "watching him" (Tr. at 45, 48). On appeal, the respondent claims that she is eligible for asylum and related protection based on her membership in the particular social group defined as "single Ecuadorian women targeted by transnational gangs" (IJ at 4; Tr. at 41; Respondent's Br. at 2-3).[3]

Even if eligible for asylum, the Immigration Judge denied asylum and withholding of removal based on the determination that the respondent's proposed particular social group of "single Ecuadorian women targeted by transnational gangs" is not cognizable under the INA (IJ at 5-6). To constitute a cognizable particular social group, a group must be "(1) composed of members who share a common immutable characteristic, (2) defined with particularity, and (3) socially distinct within the society in question." *Paloka v. Holder*, 762 F.3d 191, 196 (2d Cir. 2014) (quoting *Matter of M-E-V-G-*, 26 I&N Dec. 227, 237 (B.I.A. 2014)); *see also Ucelo-Gomez v. Mukasey*, 509 F.3d 70, 72-74 (2d Cir. 2007). The Immigration Judge correctly determined that the proposed group is not socially distinct (IJ at 5-6).

The respondent did not provide sufficient evidence to show that Ecuadoran society perceives the aforementioned group to be a distinct social group. *See Paloka*, 762 F.3d at 196 ("in determining particularity and social distinction what matters is whether society as a whole views a group as socially distinct, not the persecutor's perception."). Moreover, as found by the Immigration Judge, the respondent's proposed group is impermissibly circular (IJ at 5). *See id.* ("Persecutory conduct aimed at a social group cannot alone define the group, which must exist independently of the persecution."); *Ucelo-Gomez*, 509 F.3d at 73 ("When the harm visited upon members of a group is attributable to the incentives presented to ordinary criminals rather than to persecution, the scales are tipped away from considering those people a 'particular social group' within the meaning of the INA."); *Hernandez-Chacon v. Barr*, 948 F.3d 94, 101–02 (2d Cir. 2020) (finding insufficient evidence that women who rejected sexual advances of gang members were perceived as a particular social group in El Salvador).

On appeal, the respondent does not meaningfully challenge the Immigration Judge's findings and conclusion that the respondent did not establish the requisite nexus between the past and feared future harm and her claimed particular social group or any other protected ground under the INA (IJ at 6-7). *See also Ramsameachire v. Ashcroft*, 357 F.3d 169, 178 (2d Cir. 2004) (opining that a nexus to a protected ground under the INA is a required element for both asylum and withholding

---

[3] During the merits hearing, the respondent alleged eligibility for asylum and related protection based on her political opinion and membership in the particular social group comprised of "single Ecuadorian women targeted by transnational gangs" (IJ at 4). On appeal, the respondent does not contest the Immigration Judge's nexus finding relating to her political opinion claim (IJ at 4-5). Hence, that issue is waived. *Matter of D-G-C-*, 28 I&N Dec. 297, 297 n.1 (BIA 2021) (recognizing that aspects of the Immigration Judge's decision that are not meaningfully challenged on appeal are deemed waived before the Board).

of removal under the INA); *Matter of C-T-L-*, 25 I&N Dec. 341, 344-49 (BIA 2010) (indicating that absent a showing that a protected ground under the INA would be a "central reason" for the claimed past or future harm, the respondent cannot establish eligibility for either asylum or withholding of removal under the INA); *Matter of P-B-B-*, 28 I&N Dec. 43, 44 n.1 (BIA 2020) (stating that arguments not raised on appeal are deemed waived); *Matter of N-A-I-*, 27 I&N Dec. 72, 73 n.1 (BIA 2017) (same), aff'd sub nom. *Ali v. Barr*, 951 F.3d 275 (5th Cir. 2020). As the above issues are dispositive of the respondent's asylum and withholding of removal claim, we will affirm the denial of the respondent's applications for asylum and withholding of removal under the INA.

Also, we are not persuaded by the respondent's argument that the Immigration Judge failed to conduct an individualized analysis of the rider respondent's eligibility for relief independent of the principal applicant (Respondent's Br. at 3). The rider respondent did not file a separate asylum application, and his claim is predicated on testimony and evidence provided by the lead respondent which the Immigration Judge found to be unpersuasive.

Last, the respondent has not meaningfully challenged the Immigration Judge's denial of CAT protection (IJ at 7-8). Thus, we deem any further argument on this issue waived. *Yueqing Zhang v. Gonzales*, 426 F.3d 540, 545 n.7 (2d Cir. 2005) (deeming argument abandoned where "only a single conclusory sentence" was devoted to it). Accordingly, the following order will be entered.

ORDER: The appeal is dismissed.

NOTICE: If a respondent is subject to a final order of removal and willfully fails or refuses to depart from the United States pursuant to the order, to make timely application in good faith for travel or other documents necessary to depart the United States, or to present himself or herself at the time and place required for removal by the Department of Homeland Security, or conspires to or takes any action designed to prevent or hamper the respondent's departure pursuant to the order of removal, the respondent shall be subject to a civil monetary penalty of up to $998 for each day the respondent is in violation. *See* section 274D of the Immigration and Nationality Act, 8 U.S.C. § 1324d; 8 C.F.R. § 280.53(b)(14).

# MESSAGE TO ILLEGAL ALIENS:
# A WARNING TO SELF-DEPORT

## Benefits:

**For More Information:**

SCAN ME

Self-deportation is safe. Leave on your own terms by picking your departure flight.

Keep money earned in the U.S. If you self-deport as a non-criminal illegal alien.

Future opportunity for legal immigration. If you self-deport using CBP Home instead of being deported by ICE.

Possible Flights Home. You may be eligible to a subsidized flight if you cannot af ord to leave.

## Consequences:

Immediate deportation. You will be apprehended by DHS with no opportunity to get your af airs in order beforehand.

Fines and penalties. A fine of $998 *per day* if you received a final order of removal and stayed. A fine of $1,000 - $5,000 if you fail to self-deport after claiming that you will.

Possible imprisonment. If you fail to self-deport, you may be subject to jail time.

Barred from returning. Prohibited from reentering the U.S. through the legal immigration system.

DEPARTMENT OF JUSTICE
QUI PRO DOMINA JUSTITIA SEQUITUR

# MENSAJE A LOS INMIGRANTES ILEGALES:

# UNA ADVERTENCIA PARA LA AUTODEPORTACIÓN

## BENEFICIOS:

**Autodeportación es mas seguro.** Puede viajar bajo sus propios términos y elegir su vuelo.

**Mantenga su dinero ganado en los Estados Unidos.** Si se autodeporta como un inmigrante no criminal.

**Oportunidades de inmigración legal en el futuro.** Si se autodeporta usando la aplicación CBP Home en lugar de ser deportado por ICE.

**Posibles vuelos a casa.** Podrá ser eligible a que su vuelo sea pagado si no puede pagarlo por su cuenta.

**Para más información:**

SCAN ME

## Consecuencias :

**Deportación Inmediata.** Sera arrestado por DHS sin tener la oportunidad de poder hacer ningún arreglo de antemano.

**Multas y Sanciones.** Una multa de $998 por día si recibe una ultima orden de deportación y decide quedarse. Una multa de $1,000 - $5,000 si no se auto deporta después de haber dicho que si lo haría.

**Posible Encarcelamiento.** Si no se autodeporta, será sujeto a tiempo en prisión.

**Prohibido Regresar.** Prohibido de regresar a los Estado Unidos por el sistema legal de migración.

DEPARTMENT OF JUSTICE

QUI PRO DOMINA JUSTITIA SEQUITUR

**Andrea Soto**
**Attorney for the Respondent**
**455 Hamilton Avenue, Suite 407**
**White Plains, NY 10601**
**Attorney for Respondent**

**NOT DETAINED**

**UNITED STATES DEPARTMENT OF JUSTICE**
**EXECUTIVE OFFICE FOR IMMIGRATION REVIEW**
**BOARD OF IMMIGRATION APPEALS**

| | |
|---|---|
| **In the matter of:** | **In Removal Proceedings** |
| **Marcia Elizabeth ASTUDILLO TORRES** | **A 226-088-780** |
| **Paulo Andres TORRES ASTUDILLO** | **A 226-088-781** |
| **Respondent,** | |
| **In Removal Proceedings** | |

# RESPONDENTS' BRIEF IN SUPPORT OF APPEAL

## PRELIMINARY STATEMENT

Marcia Elizabeth Astudillo Torres ("Respondent") and Paulo Andres Torres Astudillo ("Rider Respondent") appeal from the decision of the Immigration Judge ("IJ") in New York, New York, dated April 29, 2025, denying their applications for Asylum, Withholding of Removal under INA Section 241(b)(3), and Protection Pursuant to Article 3 of the Convention Against Torture ("CAT"). IJ Decision at 8-9. Jurisdiction of the Board of Immigration Appeals ("Board") over IJ rulings for removal proceedings is set forth at 8 C.F.R. § 1003.1(b).

## ISSUES PRESENTED

**I. WHETHER THE IJ ERRED AS A MATTER OF LAW AND FACT IN DENYING RESPONDENTS' APPLICATION FOR ASYLUM.**

**II. WHETHER THE IJ ERRED AS A MATTER OF LAW AND FACT IN DENYING RESPONDENTS' APPLICATION FOR WITHHOLDING OF REMOVAL.**

**III. WHETHER THE IJ ERRED AS A MATTER OF LAW AND FACT IN DENYING RESPONDENTS' APPLICATION FOR PROTECTION PURSUANT TO THE CONVENTION AGAINST TORTURE.**

## STANDARD OF REVIEW

The Board reviews questions of law, discretion, and judgment and all other issues in appeals from decisions of immigration judges *de novo*. 8 C.F.R. § 1003.1(d)(3)(ii). Facts determined by the immigration judge, including findings as to the credibility of testimony, shall be reviewed only to determine whether the findings of the immigration judge are clearly erroneous. 8 C.F.R. § 1003.1(d)(3)(i).

Except for taking administrative notice of commonly known facts such as current events or the contents of official documents, the Board will not engage in fact finding while deciding

appeals. 8 C.F.R. § 1003.1(d)(3)(iv). For further fact finding in a particular case, the Board may remand the proceeding to the immigration judge. 8 C.F.R. § 1003.1(d)(3)(iv).

## STATEMENT OF THE CASE

Respondents, a mother and her son, are both natives and citizens of Ecuador. IJ Decision at 1. Respondents entered the United States on or about June 6, 2024. IJ Decision at 1. They were placed in removal proceedings pursuant to a Notice to Appear filed by the Department of Homeland Security ("Department") charging them as removable pursuant to INA § 212(a)(6)(A)(i). IJ Decision at 1-2. Respondents admitted the allegations set forth in the Notice to Appear and conceded removability. IJ Decision at 1-2. As relief from removal, Respondents filed timely applications for Asylum, Withholding of Removal, and protection pursuant to CAT on October 18, 2024. IJ Decision at 2.

An evidentiary hearing on the applications for relief was held on April 29, 2025. Tr. at 33-62. The IJ found that Respondent was credible. IJ Decision at 3. However, the IJ found that Respondents were ineligible for Asylum as they failed to rebut the presumption of ineligibility under the Circumvention of Lawful Pathways rule. IJ Decision at 4-5. The IJ also alternatively denied their Asylum application for failure to establish a protected ground and a nexus to that protected ground. IJ Decision at 4-7. The IJ denied their application for Withholding of Removal finding that as Respondents failed to meet the higher burden for Asylum, they necessarily failed to meet the standard for Withholding of Removal. IJ Decision at 7. The IJ denied protection pursuant to CAT finding that Respondents had not established it was more likely than not that they would be tortured upon return to Ecuador. IJ Decision at 7.

This brief is submitted in support of Respondents' timely filed notice of appeal.

## STATEMENT OF FACTS

At the hearing, the parties relied on Respondent's written statement with a limited cross-examination from the Department. Tr. at 38-40. In 2010, Respondent became pregnant with Rider Respondent. IJ Decision at 2. She moved into the home of the father of her child, Raul Aledeo Torres Altamarano. IJ Decision at 2. He would drink, do drugs, and go out on the weekends and then return home and verbally and physically abuse Respondent. IJ Decision at 2. In 2018, Respondent separated from Raul and had not further contact with him or his family. IJ Decision at 2.

However, in February 2024, Respondent began receiving phone calls inquiring into her and Rider Respondent. IJ Decision at 2. She later learned that one of the calls came from Turi, the location of a known prison that houses gang members. IJ Decision at 2.

In March 2024, a man was outside of Rider Respondent's school. IJ Decision at 3. When Respondent reported the stalking to police, they told her that she needed to present evidence. IJ Decision at 3. In April 2024, a man approached Respondent herself at work and told her that she needed to give him money that was owed to Raul. IJ Decision at 3. Respondent understood that the men calling and approaching her were gang members from Los Lobos because she knew Raul had prior dealings with them. IJ Decision at 3.

## ARGUMENTS

### I. THE IJ ERRED AS A MATTER OF LAW AND FACT IN FINDING RESPONDENTS INELIGIBLE FOR ASYLUM UNDER THE CIRCUMVENTION OF LAWFUL PATHWAYS RULE.

The circumvention of lawful pathways rule establishes a rebuttable presumption of ineligibility for Asylum for applicants who entered the United States from Mexico at the southwest land border on or after May 11, 2023, without documents sufficient for lawful admission. 8 C.F.R. § 1208.33(a). The presumption shall necessarily be rebutted if the applicant

"demonstrates by a preponderance of the evidence that exceptionally compelling circumstances exist ... at the time of entry" in the form of "an imminent and extreme threat to life or safety, such as an imminent threat of rape, kidnapping, torture, or murder." 8 C.F.R. § 1208.33(a)(3).

It is undisputed that Respondents are subject to the presumption of Asylum ineligibility. However, Respondents dispute the IJ's finding that they did not rebut the presumption by demonstrating that they faced an imminent and extreme threat to their life and safety. IJ Decision at 3-4.

While in Mexico, Respondents heard from other people that criminals were kidnapping migrants for ransom payments, and Respondent became concerned that her and her son would be harmed in the same way that they had previously experienced. The IJ failed to consider the unique vulnerabilities Respondents were subject to in Mexico as non-citizens and without male protection.

The IJ erred as a matter of law in finding Respondents ineligible for Asylum pursuant to the Circumvention of Lawful Pathways rule without considering that Respondents had rebutted the presumption given the dangerous conditions in Mexico for single, female migrants. The Board must remand Respondents' case on this matter for further fact finding.

## II. THE IJ ERRED AS A MATTER OF LAW AND FACT IN DENYING RESPONDENTS' APPLICATIONS FOR ASYLUM.

An applicant alleging past persecution has the burden of establishing that (1) her mistreatment rises to the level of persecution; (2) the persecution was on account of one or more protected grounds; and (3) the persecution was committed by the government, or by forces that the government was unable or unwilling to control. INA § § 101(a)(42)(A), 208(b)(1)(B). If past persecution is established, a regulatory presumption arises that the applicant has a well-founded fear of future persecution based on her original claim. 8 C.F.R. § 1208.13(b)(1).

As an alternative basis for denying their applications the IJ found that Respondent had not demonstrated that she possessed a political opinion such that she was harmed because of it and that their proposed particular social group "single Ecuadorian women targeted by transnational gangs," was not cognizable. IJ Decision at 4-6. The IJ also found Respondents failed to meet the nexus requirement. IJ Decision at 7.

**A. Past Persecution**

The Immigration and Nationality Act does not define the term "persecution," but the Board has defined it as a threat to life or freedom of, or infliction of suffering or harm upon, those who differ in a way regarded as offensive. *Matter of Acosta,* 19 I&N 211, 216 (BIA 1985).

Regarding past persecution, the IJ did not explicitly make a finding whether Respondents suffered past persecution. IJ Decision at 4-7. This is an error of law that requires remand as depending on whether they established past persecution or not changes their burden of proof regarding a well-founded fear of future persecution.

**B. Particular Social Group**

To be cognizable, a particular social group must contain *all* three (3) elements: (1) it is composed of members who share a common immutable characteristic; (2) it is defined with particularity; and (3) it is socially distinct within the society in question. *Matter of M-E-V-G-,* 26 I&N 227, 233 (BIA 2014). Immutable characteristics are ones that members of the group either cannot change or should not be required to change because it is fundamental to their individual identity such as gender, color, or kinship ties. *Matter of C-A-*, 23 I&N Dec. 951 (BIA 2006). Particularity requires that the group be discrete and have definable boundaries, such that it "would be recognized in the society in question, as a discrete class of persons." *Matter of M-E-V-G-*, 26 I&N Dec. at 239. Social distinction requires that the particular social group be

perceived as a separate and distinct group by the society in question, such that the shared characteristic of the group is generally recognizable by others in the community. *Id.* at 240-41.

Respondent asserted that she would be harmed on account of her anti-gang political opinion and membership in the particular social group: single Ecuadorian women targeted by transnational gangs. IJ Decision at 4. The IJ first held that Respondent did not express a political opinion. IJ Decision at 5. The IJ then determined that Respondent's proposed social group failed to meet the standards for cognizability. IJ Decision at 5-6. The IJ held that the group was circular as it does not exist independent of the harm asserted. IJ Decision at 5. The IJ also found the group did not have an immutable characteristic "as being single is not an immutable characteristic." IJ Decision at 6.

Respondent's group "single Ecuadorian women targeted by transnational gangs" is cognizable because it is immutable, particular, and socially distinct. First, the proposed group contains the immutable characteristics of gender, nationality, and marital status. *See* INA § 101(a)(42) (listing nationality as a protected ground); *Matter of Acosta*, 19 I&N Dec. 211, 233-34 (BIA 1985) (recognizing that a "common, immutable characteristic" may include one's "sex, color, or kinship"); *Matter of H-*, 21 I&N Dec. 337 (BIA 1996) (finding that aspects of family structure can be considered immutable).

Second, the terms that define Respondent's proposed social group are clear, precise, and identifiable. An individual who falls into this group must be female, must be Ecuadorian, and must be not legally married—three (3) easily ascertainable traits.

Lastly, the group is socially distinct as Ecuador views women as distinct given the unique civil society organizations that provide services as well as the various laws that serve to uniquely protect women that they do not effectively enforce. There is public awareness and

acknowledgment of gang targeting of women perceived as vulnerable, especially those without male partners or state protection.

The additional qualifier "targeted by transnational gangs" reflects an existing, real-world circumstance that Respondents cannot change or avoid. It is not a circular definition of harm but a description of the group's persecutory context. *See Perez-Rabanales v. Sessions*, 881 F.3d 61 (1st Cir. 2018).

The IJ's conclusion that Respondent's proposed social group was not cognizable was an error of law as it departed from Board precedent and is unsupported by ample evidence that demonstrates that single Ecuadorian women targeted by transnational gangs contains immutable characteristics, is particular, and is socially distinct. Respondents ask that the Board vacate the decision on this issue and grant their appeal, or, in the alternative, remand their case for further proceedings which requires analyzing, independent of the claimed persecution, whether her group has *all* the required elements.

**C. Nexus**

To establish a nexus to a protected ground, an applicant must establish that such ground is "one central reason" for the persecution. INA § 208(b)(1)(B)(i). The Board has made clear that "an applicant does not bear the unreasonable burden of establishing the exact motivation of a persecutor where different reasons for actions are possible." *Matter of Fuentes*, 19 I&N Dec. 658, 662 (BIA 1988). The applicant must produce evidence, either direct or circumstantial, from which it is reasonable to believe that the harm was or would be motivated in part by an actual or imputed protected ground. *Matter of S-P-*, 21 I&N Dec. 486, 489 (BIA 1996); *see also INS v. Cardoza-Fonseca*, 480 U.S. 421 (1987). However, the protected ground cannot be "incidental, tangential, superficial, or subordinate to another reason." *Matter of J-B-N-*, 24 I&N 208, 214

(BIA 2007). Where there are mixed motives for persecution, the nexus requirement is met where the protected ground is one central reason for the persecution. *Matter of C-T-L-*, 25 I&N Dec. 341, 348 (BIA 2010).

Regarding the requisite nexus, the IJ held that Respondent fears generalized violence committed by gang members and had not demonstrated a nexus to a protected ground. IJ Decision at 6-7.

The threats made against Respondent, demanding she repay a gang debt six (6) years after escaping her abuser, establishes a sufficient nexus to her particular social group "single Ecuadorian women who are targeted by transnational gangs." The gang's targeting of Respondent is not random. Rather, it flows directly from her past relationship with a man who was affiliated with or indebted to the gang. Despite having no contact with him for over six (6) years, the gang continues to view her as connected to him, either as a proxy or as a woman who "owes" them by virtue of her past association. In this way, the threats are directly linked to her status as a woman previously controlled by a gang-affiliated partner—a characteristic that satisfies the "on account of" requirement under INA § 208(b)(1)(B)(i).

The persecution here is "on account of" Respondent's status as a woman formerly in a domestic relationship with a man associated with gangs. The timing of the threats—emerging years after their relationship ended—underscores that the persecution is not due to a new conflict or arbitrary crime, but a residual social and gendered perception that Respondent remains bound to the man's legacy and his obligations. The gang's threats are not being made to all community members. They are uniquely directed at Respondent because of her gendered role in a prior relationship. In societies where patriarchal norms are deeply entrenched and women are often

seen as subservient or as property, gangs may enforce debts or retribution through former intimate partners, especially when the male partner has disappeared, died, or fled.

Therefore, the harm Respondent faces is not random or solely criminal in nature. It is on account of her membership in a cognizable particular social group—one that reflects her immutable past and her socially distinct identity as a woman formerly controlled by a gang-affiliated intimate partner. The threats stem from precisely that history and social perception. In light of these errors, Respondents ask that the decision be vacated, and their appeal be granted, or, in the alternative, their case be remanded for appropriate consideration of the nexus issue in light of all surrounding factors.

## III. THE IJ ERRED AS A MATTER OF LAW AND FACT IN DENYING RESPONDENTS' APPLICATIONS FOR WITHHOLDING OF REMOVAL.

Withholding of Removal under 8 U.S.C. § 1231(b)(3) prohibits removal to a country where the noncitizen's life or freedom would be threatened on account of their race, religion, nationality, membership in a particular social group, or political opinion.

The IJ found that as the "more likely than not" standard for Withholding of Removal is more stringent than the "reasonable possibility" standard for Asylum and that because Respondents failed to meet their burden of proving Asylum, they necessarily failed to meet their burden for Withholding of Removal. IJ Decision at 7.

Respondents assert that for the same reasons the IJ erred in denying their application for Asylum, the IJ also erred in denying their application for Withholding of Removal.

## IV. THE IJ ERRED AS A MATTER OF LAW AND FACT IN DENYING RESPONDENTS' APPLICATIONS FOR PROTECTION PURSUANT TO THE CONVENTION AGAINST TORTURE.

To be granted protection pursuant to CAT, an applicant must demonstrate a clear probability of torture inflicted by or at the instigation of or with the consent or acquiescence of a public official or other person acting in an official capacity. 8 C.F.R. § 1208.18(a)(1). Torture is defined as any act by which severe pain or suffering, whether physical or mental, is intentionally inflicted on a person for such purposes as obtaining information or a confession, punishing an act committed or one suspected of having been committed, intimidating or coercing, or for any reason based on discrimination of any kind. 8 C.F.R. § 1208.18(a)(1). Acquiescence of a public official requires that the public official, prior to the activity constituting torture, have awareness of such activity and thereafter breach his or her legal responsibility to intervene to prevent such activity. 8 C.F.R. § 208.18(a)(1).

In determining whether an applicant is entitled to protection pursuant to CAT, all evidence relevant to the possibility of future torture in the proposed country of removal shall be considered, including, but not limited to: past torture inflicted upon the applicant; evidence that the applicant could relocate to another part of the country of removal where he or she is not likely to be tortured; gross, flagrant, or mass violations of human rights; and other relevant information regarding conditions in the country of deportation. 8 C.F.R. § 208.16(c)(3).

The IJ held that Respondent was ineligible for protection pursuant to CAT as she had not established that it was more likely than not that she would be tortured upon return to Ecuador. IJ Decision at 7. The IJ found that Respondent failed to show that the Ecuadorian government would acquiesce in any future torture because although there is "violence [] being perpetrated by detained gang members," and the violence "is troubling," "it is an indication that [the]

Ecuadorian government is arresting, prosecuting and imprisoning members of criminal gangs." IJ Decision at 7-8.

Respondent is eligible for protection pursuant to CAT because she demonstrated that it is more likely than not that she would be tortured by or with the acquiescence of the Ecuadorian government.

CAT protection requires showing that it is more likely than not that a person will suffer torture by or with the acquiescence of a public official or person acting in an official capacity. *Acquiescence* includes both actual knowledge and willful blindness, not just affirmative state involvement. See *Matter of O-F-A-S-*, 28 I&N Dec. 35, 38 (BIA 2020); *Khouzam v. Ashcroft*, 361 F.3d 161, 171 (2d Cir. 2004). The IJ improperly focused on the mere existence of some prosecutions and arrests to conclude that the Ecuadorian government is not acquiescing in torture. However, partial or symbolic enforcement efforts do not rebut a CAT claim where systemic corruption, impunity, or incapacity renders state protection ineffective in practice.

While the IJ acknowledged that violence by gang members is "troubling," the IJ dismissed Respondents' claim on the ground that the Ecuadorian government is "arresting, prosecuting and imprisoning" some gang members. IJ Decision at 7–8. This reasoning is legally and factually flawed. Human rights reports from the U.S. State Department, Human Rights Watch, and UNHCR have consistently documented the ineffectiveness and corruption within Ecuador's justice and law enforcement systems. Gangs continue to operate with impunity, both inside and outside of detention. As the IJ noted, violence continues even from detained gang members, which is powerful evidence that the state cannot control or contain their reach, even through incarceration.

Respondent previously received direct, repeated threats from individuals affiliated with transnational criminal organizations. These threats escalated despite her relocation and years of separation from her former abuser. The gangs' persistence in targeting Respondent—despite her efforts to distance herself—demonstrates a clear intention to inflict severe pain or suffering in retaliation or to intimidate, which satisfies the definition of *torture* under 8 C.F.R. § 1208.18(a).

Courts have repeatedly held that CAT protection may be warranted even where the state prosecutes some offenders, so long as the applicant shows that state protection is ineffective in her particular case. *See Suharni v. Holder*, 764 F.3d 1182, 1189 (9th Cir. 2014) (holding that "limited government efforts to combat crime do not preclude CAT relief where gangs continue to act with impunity."). Here, Respondent testified that unless her or her son are seriously harmed, the Ecuadorian police will not protect them demonstrating that in her particular case, the Ecuadorian government acquiesces to the harm she fears.

Considering the extreme levels of violence against single women in Ecuador, Respondent is more likely than not to suffer torture in Ecuador and that the government acquiesces to the harm she fears. As such, Respondent asks that the Board grant her appeal. If the Board should disagree, however, Respondent respectfully requests that the Board vacate the decision in light of these errors and remand the case for appropriate consideration of her claim for relief under the Convention Against Torture.

## CONCLUSION

Respondents respectfully request that the Board grant their applications for relief based on the evidence and credible testimony in the record establishing that they suffered past persecution and have a well-founded fear of future persecution in Ecuador. Alternatively, based on the significant legal and analytical errors described herein, Respondents respectfully request

that the Board remand these proceedings to the Immigration Court for appropriate consideration and adjudication of the applications for relief.

Dated this 26th day of June 2025.

Respectfully submitted,

Andrea Soto
Attorney for Respondents

## CERTIFICATE OF SERVICE

I hereby certify that on this 26th day of June 2025, I electronically uploaded a true and correct copy of the foregoing **Respondents' Brief in Support of Appeal** regarding **Marcia Elizabeth ASTUDILLO TORRES**, **A 226-088-780**, and **Paulo Andres TORRES ASTUDILLO**, **A 226-088-781**, via ECAS and both parties are participating. Therefore, no separate service was completed.

Andrea Soto
Attorney for Respondents

U.S. Department of Justice

Executive Office for Immigration Review

*Board of Immigration Appeals*
*Office of the Clerk*

*5107 Leesburg Pike, Suite 2000*
*Falls Church, Virginia 22041*

**Soto, Andrea**
**Soto Law, PLLC**
**455 Hamilton Avenue**
**Suite 407**
**White Plains, NY 10601**

**DHS/ICE OFFICE OF CHIEF COUNSEL - NYI**
**26 FEDERAL PLAZA, 11TH FLOOR**
**NEW YORK, NY 10278**

**Name: ASTUDILLO TORRES, MARCI...** **A 226-088-780**
**Riders:226-088-781**

**Type of Proceeding: Removal** **Date of this notice: 6/25/2025**

**Type of Appeal: Case Appeal** **Filed By: Alien**

**REJECTION OF BRIEF**

o Electronic Filing Required. The Record of Proceedings (ROP) is an electronic ROP (eROP). You did not electronically submit this filing. See 8 C.F.R. §§ 1003.2(g)(4), 1003.3(g)(1).

**PLEASE NOTE**

The Board of Immigration Appeals (Board or BIA) is returning your brief for the reason(s) stated above. If you file your brief late, you should file it along with a motion for consideration of your late-filed brief. There is no fee for such a motion. The motion and brief need to be submitted together. The motion should set forth in detail the reasons that prevented you from filing your brief on time. The motion should be supported by affidavits, declarations, or other evidence. Only one such motion will be considered by the BIA.

**FILING INSTRUCTIONS - In General**

**IMPORTANT: Briefs and other submissions should always be paginated. Parties should limit their briefs to 30 pages unless directed by the Board. For spacing, parties should use double-spaced text and single-spaced footnotes. Parties are reminded to consult Chapter 3 (Filing with the Board) and Chapter 4.6 (Appeal Briefs) of the BIA's Practice Manual, found within EOIR's Policy Manual, which is available on EOIR's website at www.justice.gov/eoir.**

**Motions to accept briefs that exceed the page limitation established by the Board are disfavored, and will not be granted absent a showing of extraordinary and compelling circumstances. If a party files a motion to increase the page limit, the motion and the brief need to be filed together.**

If you have any questions about how to file something at the Board, please review the BIA Practice Manual, found within EOIR's Policy Manual available on EOIR's website at www.justice.gov/eoir.