# 26-1233

**IN THE UNITED STATES COURT OF APPEALS**
**FOR THE SECOND CIRCUIT**

**MARCIA ELIZABETH ASTUDILLO TORRES and P.A.T.A.,**

**Petitioners-Appellants,**

**v.**

**TODD BLANCHE, in his Official Capacity as Attorney General of the United States,**

**Respondent-Appellee.**

*ON PETITION FOR REVIEW OF A DECISION OF THE BOARD OF IMMIGRATION APPEALS*

**Petitioners' Opening Brief**

**Andrea C. Soto**
**SOTO LAW, PLLC**
445 Hamilton Avenue, Suite 600
White Plains, NY 10601
Tel.: (914) 290-4900
Fax: (914) 898-9100
Email: asoto@andreasotolaw.com
Attorney for Petitioners–Appellants

## CORPORATE DISCLOSURE STATEMENT

Pursuant to Fed. R. App. P. 26.1 and Local Rule 26.1.1, Petitioners–Appellants state that they are individuals and that no corporate disclosure statement is required.

# TABLE OF CONTENTS

**CORPORATE DISCLOSURE STATEMENT** .......... i
**TABLE OF CONTENTS** .......... ii
**TABLE OF AUTHORITIES** .......... iv
**STATEMENT AS TO ORAL ARGUMENT** .......... 1
**JURISDICTION** .......... 2
**STATEMENT OF ISSUES** .......... 3
**STATEMENT OF THE CASE** .......... 4
**STATEMENT OF FACTS** .......... 6
**RELATED CASES** .......... 12
**STANDARD OF REVIEW** .......... 13
**SUMMARY OF THE ARGUMENT** .......... 14
**ARGUMENT** .......... 16

I. THE BOARD ABUSED ITS DISCRETION BY DENYING THE MOTION WITHOUT ADDRESSING THE MATERIAL EVIDENCE AND EQUITIES PETITIONERS PRESENTED .......... 16

II. THE BOARD ERRED IN HOLDING THAT AN APPROVED SPECIAL IMMIGRANT JUVENILE CANNOT ESTABLISH PRIMA FACIE ELIGIBILITY UNTIL HIS PRIORITY DATE IS CURRENT .......... 20

III. THE BOARD'S REFUSAL TO REOPEN SUA SPONTE RESTED ON A MISPERCEPTION OF THE GOVERNING LAW AND OF THE MOTION'S PROCEDURAL POSTURE .......... 27

**CONCLUSION** .......... 30
**CERTIFICATE OF SERVICE** .......... 31
**TYPE VOLUME LIMITATIONS** .......... 32
**BAR MEMBERSHIP** .......... 32

**Addendum**

Order on Appeal, *In re Marcia Elizabeth Astudillo Torres and P.A.T.A.*, A226-088-780 / A226-088-781 (BIA Apr. 10, 2026) .......... Add.1

*In re Marcia Elizabeth Astudillo Torres and P.A.T.A.*, A226-088-780 / A226-088-781 (BIA Sept. 23, 2025) .......... Add.4

*In re Marcia Elizabeth Astudillo Torres and P.A.T.A.*, A226-088-780 / A226-088-781 (IJ Apr. 29, 2025) .......... Add.7

Form I-360 Approval Notice for P.A.T.A. (USCIS Aug. 22, 2025)....................................Add.16
Custody Order, Westchester Cnty. Fam. Ct. (Mar. 19, 2025)..............................................Add.17
SIJ Status Order, Westchester Cnty. Fam. Ct. (Mar. 19, 2025)............................................Add.19
Psychiatric Evaluation of Marcia E. Astudillo Torres (Sept. 30, 2025)...............................Add.22

# TABLE OF AUTHORITIES

Page(s)

Cases

*Ali v. Gonzales*,
448 F.3d 515 (2d Cir. 2006)....................13, 27
*INS v. Abudu*,
485 U.S. 94 (1988)....................16
*Kaur v. BIA*,
413 F.3d 232 (2d Cir. 2005)....................13
*Ke Zhen Zhao v. U.S. Dep't of Justice*,
265 F.3d 83 (2d Cir. 2001)....................13, 16, 19, 26
*Kucana v. Holder*,
558 U.S. 233 (2010)....................2
*Lopes v. Gonzales*,
468 F.3d 81 (2d Cir. 2006)....................13
*Mahmood v. Holder*,
570 F.3d 466 (2d Cir. 2009)....................3, 13, 15, 27, 28
*Melnitsenko v. Mukasey*,
517 F.3d 42 (2d Cir. 2008)....................13, 16
*SEC v. Chenery Corp.*,
332 U.S. 194 (1947)....................19
*Sheng Gao Ni v. BIA*,
520 F.3d 125 (2d Cir. 2008)....................26
*Tanusantoso v. Barr*,
962 F.3d 694 (2d Cir. 2020)....................17, 19

Administrative Decisions

*Matter of Cahuec Tzalam*,
29 I&N Dec. 300 (BIA 2025)....................passim
*Matter of Garcia*,
16 I&N Dec. 653 (BIA 1978)....................25, 26
*Matter of Hashmi*,
24 I&N Dec. 785 (BIA 2009)....................25, 26
*Matter of J-J-*,
21 I&N Dec. 976 (BIA 1997)....................28

*Matter of L-A-B-R-*,
27 I&N Dec. 405 (A.G. 2018)....................25
*Matter of L-O-G-*,
21 I&N Dec. 413 (BIA 1996)....................20, 23

Statutes

8 U.S.C. § 1101(a)(27)(J)....................4, 18, 21
8 U.S.C. § 1153(b)(4)....................22
8 U.S.C. § 1182(a)(6)(A)....................4, 22
8 U.S.C. § 1229a(c)(7)....................17, 24, 28
8 U.S.C. § 1232(d)(6)....................22
8 U.S.C. § 1252(a)(1)....................2
8 U.S.C. § 1252(b)(1)....................2
8 U.S.C. § 1252(b)(2)....................2
8 U.S.C. § 1255(h)....................22

Regulations

8 C.F.R. § 1003.2(a)....................28
8 C.F.R. § 1003.2(c)....................16, 17, 24
8 C.F.R. § 1003.2(g)(3)....................17
8 C.F.R. § 1208.33....................8

Rules

Fed. R. App. P. 26.1....................i
Fed. R. App. P. 32....................32
2d Cir. Local R. 32.1(a)(4)(A)....................32

## STATEMENT AS TO ORAL ARGUMENT

Petitioners–Appellants respectfully request oral argument. This petition presents a question of recurring importance in this Circuit: whether the Board of Immigration Appeals may deny a timely motion to reopen filed on behalf of a child whom United States Citizenship and Immigration Services has already classified as a Special Immigrant Juvenile, on the sole ground that his visa priority date is not yet current, without addressing the state court findings that Congress made a precondition of that classification and without engaging with the evidence of hardship presented in the motion.

The Board's decision rests on *Matter of Cahuec Tzalam*, 29 I&N Dec. 300 (BIA 2025), a precedent issued after Petitioners filed their motion and addressed administrative closure rather than reopening. Petitioners are not aware of any decision of this Court addressing whether that standard governs a motion to reopen filed by an approved Special Immigrant Juvenile. Oral argument would materially assist the Court in resolving these questions.

## JURISDICTION

This Court has jurisdiction under 8 U.S.C. § 1252(a)(1) to review the final order of the Board of Immigration Appeals dated April 10, 2026, denying Petitioners' timely motion to reopen. CAR 3–5. The courts of appeals have jurisdiction to review the Board's denial of a motion to reopen. *Kucana v. Holder*, 558 U.S. 233 (2010). Petitioners filed their petition for review on May 4, 2026, within thirty days of the Board's decision. 8 U.S.C. § 1252(b)(1).

Venue lies in this Circuit under 8 U.S.C. § 1252(b)(2) because the Immigration Judge completed the proceedings in New York, New York. CAR 147, 151.

## STATEMENT OF ISSUES

1. Whether the Board abused its discretion by denying Petitioners' timely motion to reopen without addressing the material evidence submitted with the motion, including the New York Family Court's findings that the minor petitioner was abandoned by his father, that no relative or other resource is available to care for him in Ecuador, and that his return to Ecuador is not in his best interest, together with the evidence that the lead petitioner is his sole custodian and the medical evidence of her condition.

2. Whether the Board erred in holding that the minor petitioner, an approved Special Immigrant Juvenile, failed to establish prima facie eligibility for adjustment of status, by applying an administrative closure precedent to a motion to reopen, by treating the present unavailability of a visa number as dispositive, and by disregarding that Congress has exempted Special Immigrant Juveniles from the very ground of inadmissibility on which he was ordered removed.

3. Whether the Board's refusal to reopen *sua sponte* rested on a misperception of the governing law and of the procedural posture of a timely motion, warranting remand under *Mahmood v. Holder*, 570 F.3d 466 (2d Cir. 2009).

## STATEMENT OF THE CASE

This is a petition for review of the April 10, 2026 decision of the Board of Immigration Appeals denying the timely motion to reopen and remand filed by Petitioner Marcia Elizabeth Astudillo Torres (A226-088-780) and her minor son, P.A.T.A. (A226-088-781). CAR 3–5.

Petitioners are natives and citizens of Ecuador who entered the United States on or about June 6, 2024. CAR 151. The Department of Homeland Security served them with Notices to Appear charging them as inadmissible under 8 U.S.C. § 1182(a)(6)(A)(i). Through counsel, they admitted the factual allegations and conceded removability. CAR 151–52. Ms. Astudillo Torres applied for asylum, withholding of removal, and protection under the Convention Against Torture, and listed P.A.T.A. as a derivative applicant. CAR 152.

While the case was pending, P.A.T.A. pursued Special Immigrant Juvenile classification. On March 19, 2025, the Family Court of the State of New York, Westchester County, awarded Ms. Astudillo Torres sole legal and physical custody of P.A.T.A. and issued an order containing the findings required by 8 U.S.C. § 1101(a)(27)(J). CAR 21–25. P.A.T.A. then filed a Form I-360 petition, which established a priority date of March 28, 2025. CAR 20. The Immigration Judge denied Petitioners' motion for a continuance, CAR 559, and denied two motions to sever P.A.T.A.'s case, CAR 481, 209–10.

On April 29, 2025, the Immigration Judge denied all relief and ordered Petitioners removed to Ecuador. CAR 147–60. The Board dismissed Petitioners' appeal on September 23, 2025. CAR 100–02.

In the meantime, on August 22, 2025, USCIS approved P.A.T.A.'s Form I-360 and classified him as a Special Immigrant Juvenile. CAR 20. On October 3, 2025, ten days after the Board's decision, Petitioners filed a motion to reopen and remand, together with a motion for an emergency stay of removal. CAR 8, 10–57. The Department of Homeland Security did not file a brief in opposition. CAR 3.

On April 10, 2026, a single Appellate Immigration Judge denied the motion. CAR 3–5. Petitioners filed a timely petition for review on May 4, 2026.

## STATEMENT OF FACTS

Ms. Astudillo Torres was born in Ecuador on July 28, 1989. CAR 27. Her son, P.A.T.A., was born on May 9, 2011. CAR 21. She testified that P.A.T.A.'s father abused her during their relationship and that after she separated from him in 2018 she had no further contact with him or his family. CAR 152. In early 2024, she began receiving telephone calls from persons asking about her and her son, a man was seen outside her son's school, and a man approached her at work demanding payment of a debt owed by the child's father. CAR 152–53. She and her son came to the United States in June 2024. CAR 151.

At a master calendar hearing on September 9, 2024, the Immigration Judge asked Ms. Astudillo Torres whether P.A.T.A.'s father supported or communicated with the child, and she answered that he did not. CAR 190. The Immigration Judge then advised her that if her son had been abandoned, abused, or neglected, it might be possible to seek Special Immigrant Juvenile status for him through the state family court. *Id.* Petitioners followed that path. At the next hearing, counsel informed the Immigration Court that a custody petition was pending in Family Court and that P.A.T.A. intended to seek Special Immigrant Juvenile status. CAR 196–97.

On March 19, 2025, the Westchester County Family Court awarded Ms. Astudillo Torres sole legal and physical custody of P.A.T.A., with the consent of the child's father and of the court-appointed attorney for the child. CAR 21–22. The same day, the Family Court issued a Special Immigrant Juvenile order. CAR 23–25. The court found that reunification with the father "is not viable due to abandonment," that the father "has left the child without providing for his support or care for over seven (7) years," and that he "has not had any contact with the Child for over seven (7) years." CAR 24–25. The court further found:

> It is in the child's best interest to remain with the petitioner. There is no available relative or viable resource for the child to live with in the country of nationality or country of last habitual residence of the child or the birth parents. There is no one who is able or willing to provide the child with a safe home and provide for the child's safety and needs. . . . [I]t is not in the Child's best interest to be returned to Ecuador.

CAR 25.

USCIS received P.A.T.A.'s Form I-360 petition on March 28, 2025, which became his priority date. CAR 20. Petitioners promptly brought these developments to the Immigration Court. They moved for a continuance to allow USCIS to adjudicate the petition, CAR 561–63, which the Immigration Judge denied on April 7, 2025. CAR 559. They moved to sever P.A.T.A.'s case from his mother's, and the Immigration Judge denied the motion without prejudice because

the receipt notice had not yet been submitted. CAR 481. Petitioners renewed the motion with the receipt notice and explained that P.A.T.A. intended to seek termination of his proceedings once the petition was approved. CAR 464–66.

At the merits hearing on April 29, 2025, the Department opposed severance because the petition had not yet been approved. CAR 209. The Immigration Judge denied the renewed motion, reasoning that "the relief is too speculative at this point" and that "even with an approved I-360 there would still be no Visa number immediately available to the respondent." CAR 210. The Immigration Judge acknowledged that P.A.T.A. "would still be able to seek relief before USCIS independent of whatever the Court decides today." *Id.* Counsel objected to the ruling. CAR 211.

The Immigration Judge then heard Ms. Astudillo Torres's claim. The Immigration Judge assumed her credibility, CAR 153, but found her ineligible for asylum under the circumvention of lawful pathways rule, 8 C.F.R. § 1208.33, CAR 154, and in the alternative concluded that she had not established a cognizable particular social group or a nexus to a protected ground. CAR 155–57. The Immigration Judge also denied withholding of removal and protection under the Convention Against Torture, and denied P.A.T.A.'s derivative asylum claim. CAR 157–60. On September 23, 2025, the Board dismissed the appeal. CAR 100–02.

The Board rejected the argument that the Immigration Judge should have separately analyzed P.A.T.A.'s eligibility for relief, noting that he "did not file a separate asylum application." CAR 102.

On August 22, 2025, USCIS approved P.A.T.A.'s Form I-360 and classified him as a Special Immigrant Juvenile. CAR 20. The approval notice states that the petition "indicates that the person the petition is for is in the United States and will apply for adjustment of status." *Id.*

On September 27, 2025, Ms. Astudillo Torres was seen in the emergency department of Westchester Medical Center. CAR 29–43. On September 30, 2025, a psychiatrist diagnosed her with major depressive disorder and generalized anxiety disorder. CAR 27–28. The psychiatrist reported that she becomes distraught thinking about what would happen to her fourteen-year-old son if she were deported, and that her son "depends on her in every aspect of his life." *Id.*

On October 3, 2025, ten days after the Board's decision, Petitioners filed a motion to reopen and remand. CAR 8, 10–16. They explained that USCIS had approved P.A.T.A.'s Form I-360, that "the child is able to adjust status as soon as an immigrant visa priority date becomes available," and that removing him "at this stage would deny him the possibility, despite his approved status." CAR 14. Petitioners submitted the approval notice, the Family Court orders, and the medical

evidence. CAR 17–43. Petitioners argued that Ms. Astudillo Torres is P.A.T.A.'s sole caregiver, that the Family Court had found that no one in Ecuador could care for him, and that her removal "would likely cause developmental and emotional harm to her child." CAR 14–15. In the alternative, they asked the Board to reopen sua sponte. CAR 13, 15.

Petitioners filed a motion for an emergency stay of removal with the motion to reopen. CAR 48–57. In it, they argued that P.A.T.A.'s approved petition was a concrete rather than speculative basis for relief, that his proceedings should have been terminated or continued while his adjustment became available, and that neither petitioner has any criminal history and both have complied with every supervision requirement. CAR 51–56. The Department of Homeland Security did not file a responsive brief to Petitioners' motion to reopen. CAR 3.

On April 10, 2026, a single Appellate Immigration Judge denied the motion. CAR 3–5. The Board stated that Ms. Astudillo Torres "does not claim that she is eligible for any immediate relief from removal." CAR 4. As to P.A.T.A., the Board reasoned that visas in his category were then available only to petitioners with priority dates before July 15, 2022, that his priority date of March 28, 2025 reflected "a 3-year gap," and that his eligibility for adjustment was therefore "speculative," so that "he has not demonstrated prima facie eligibility for relief."

*Id.* (citing *Matter of Cahuec Tzalam*, 29 I&N Dec. 300, 305 (BIA 2025)). The Board summarized Petitioners' argument that Ms. Astudillo Torres is P.A.T.A.'s sole caregiver and that her removal would harm him, CAR 3–4, but did not otherwise address that argument, the Family Court's findings, or the medical evidence. In a single sentence, the Board concluded that "the record before us does not present an exceptional situation that warrants the exercise of our sua sponte reopening authority." CAR 4.

## RELATED CASES

Petitioners–Appellants are not aware of any related case pending in this Court or in any other court.

## STANDARD OF REVIEW

This Court reviews the Board's denial of a motion to reopen for abuse of discretion. *Kaur v. BIA*, 413 F.3d 232, 233 (2d Cir. 2005) (per curiam). An abuse of discretion may be found where the Board's decision "provides no rational explanation, inexplicably departs from established policies, is devoid of any reasoning, or contains only summary or conclusory statements." *Ke Zhen Zhao v. U.S. Dep't of Justice*, 265 F.3d 83, 93 (2d Cir. 2001) (citations omitted). The Board also "exceeds its allowable discretion when it fails to consider the facts of record relevant to the motion." *Melnitsenko v. Mukasey*, 517 F.3d 42, 50 (2d Cir. 2008) (citing *Lopes v. Gonzales*, 468 F.3d 81, 85–86 (2d Cir. 2006)). Questions of law, including whether the Board applied the correct legal standard, are reviewed de novo.

The Board's decision whether to reopen sua sponte is generally committed to its discretion. *Ali v. Gonzales*, 448 F.3d 515, 518 (2d Cir. 2006). Where, however, the Board "may have declined to exercise its sua sponte authority because it misperceived the legal background and thought, incorrectly, that a reopening would necessarily fail," remand "for reconsideration in view of the correct law is appropriate." *Mahmood v. Holder*, 570 F.3d 466, 469 (2d Cir. 2009).

## SUMMARY OF THE ARGUMENT

The Board denied a timely and unopposed motion to reopen filed on behalf of a fourteen-year-old boy whom USCIS had already classified as a Special Immigrant Juvenile, and on behalf of his mother, his sole legal custodian. The Board's decision cannot stand for three reasons.

First, the Board did not engage with the evidence that was the heart of the motion. A New York Family Court found that P.A.T.A. was abandoned by his father, that no relative or other resource is available to care for him in Ecuador, and that his return to Ecuador is not in his best interest. Congress made precisely those findings a statutory element of Special Immigrant Juvenile classification, and USCIS relied on them when it approved P.A.T.A.'s petition. The motion also documented the lead petitioner's role as his sole caregiver and her psychiatric diagnoses. Although the Board briefly acknowledged the caregiver argument, its decision did not address the Family Court's findings or the supporting medical evidence. Given the materiality of this evidence, the Board's limited analysis raises substantial concerns as to whether it adequately considered the record in exercising its discretion.

Second, the Board erred as a matter of law in holding that P.A.T.A. could not establish prima facie eligibility for relief. P.A.T.A. satisfies every requirement

for adjustment of status except a currently available visa number. Congress deemed Special Immigrant Juveniles paroled for purposes of adjustment and exempted them from the ground of inadmissibility under which he was ordered removed, and his classification is protected against loss by reason of age. The Board nonetheless treated the arithmetic difference between his priority date and the current cutoff date as dispositive, borrowing the reasoning of *Matter of Cahuec Tzalam*, an administrative closure precedent issued after Petitioners filed their motion and involving a respondent who, unlike P.A.T.A., had not shown that he was eligible for classification at all.

Third, the Board's one-sentence refusal to reopen sua sponte rested on the same legal error, and it invoked authority directed at motions that attempt to cure filing defects, even though Petitioners' motion was filed ten days after the final order. Because the Board may have declined to exercise its authority on the basis of a misperception of the governing law, remand is warranted under *Mahmood v. Holder*, 570 F.3d 466, 469 (2d Cir. 2009).

## ARGUMENT

### I. THE BOARD ABUSED ITS DISCRETION BY DENYING THE MOTION WITHOUT ADDRESSING THE MATERIAL EVIDENCE AND EQUITIES PETITIONERS PRESENTED

A motion to reopen must state the new facts to be proven at a hearing and must be supported by affidavits or other evidentiary material. 8 U.S.C. § 1229a(c)(7)(B). The Board may not grant the motion unless the evidence offered is material and was not available and could not have been presented at the former hearing. 8 C.F.R. § 1003.2(c)(1). The Supreme Court has identified three grounds on which the Board may deny such a motion: the movant has not established a prima facie case for the relief sought, the movant has not introduced previously unavailable and material evidence, or, where relief is discretionary, the movant would not be entitled to a favorable exercise of discretion. *INS v. Abudu*, 485 U.S. 94, 104–05 (1988). Whatever the ground, the Board must actually engage with the evidence presented. An abuse of discretion may be found where the Board's decision "is devoid of any reasoning, or contains only summary or conclusory statements." *Ke Zhen Zhao*, 265 F.3d at 93. The Board likewise "exceeds its allowable discretion when it fails to consider the facts of record relevant to the motion." *Melnitsenko*, 517 F.3d at 50. Although the Board "need not expressly parse or refute on the record each individual argument or piece of evidence," it must "meaningfully account" for a petitioner's primary evidence "in some way," particularly where

that evidence points toward a conclusion contrary to the one the Board reached. *Tanusantoso v. Barr*, 962 F.3d 694, 699 (2d Cir. 2020) (citations omitted).

Petitioners' motion was timely. It was filed on October 3, 2025, ten days after the Board's final order of September 23, 2025, well within the ninety days allowed by statute and regulation. 8 U.S.C. § 1229a(c)(7)(C)(i). 8 C.F.R. § 1003.2(c)(2). It was the first and only motion to reopen. The Department of Homeland Security did not respond, CAR 3, and under the Board's own regulation the motion was therefore "deemed unopposed." 8 C.F.R. § 1003.2(g)(3).

The motion presented evidence that was both new and material. The approval of P.A.T.A.'s Form I-360 on August 22, 2025, CAR 20, postdated the Immigration Judge's hearing and changed his legal status from that of a derivative asylum applicant to that of a noncitizen whom the United States has classified as a Special Immigrant Juvenile. The approval gave legal effect to the Family Court's findings that P.A.T.A. had been abandoned by his father for more than seven years, that "[t]here is no available relative or viable resource for the child to live with" in Ecuador, that "[t]here is no one who is able or willing to provide the child with a safe home," and that "it is not in the Child's best interest to be returned to Ecuador." CAR 24–25. The psychiatric evaluation and emergency room records from September 2025 documented the lead petitioner's major depressive disorder

and generalized anxiety disorder, and her son's complete dependence on her. CAR 27–43.

These findings are not ordinary evidence of hardship. Congress made a state juvenile court's determination that it would not be in the child's best interest to be returned to his country of nationality an element of Special Immigrant Juvenile classification. 8 U.S.C. § 1101(a)(27)(J)(ii). Federal law thus incorporates and relies on precisely the kind of findings the Family Court made here, and USCIS accepted those findings when it approved P.A.T.A.'s petition. CAR 20. The Family Court also awarded the lead petitioner sole legal and physical custody of P.A.T.A. CAR 22. The practical consequence of the Board's order is that the only person whom a state court has entrusted with this child's care may be removed to the very country to which the court found it is not in his best interest to return.

The Board did not address any of this. Its decision devotes a single sentence to summarizing the argument that Ms. Astudillo Torres is P.A.T.A.'s sole caregiver and that her removal would cause him developmental and emotional harm. CAR 3–4. It then turns immediately to visa availability and never returns to the subject. CAR 4. The decision does not mention the Family Court's findings of abandonment, the absence of any caregiver in Ecuador, or the finding that return is not in the child's best interest. It does not mention the custody order. Nor does it

mention the psychiatric evaluation or the medical records. The decision does not purport to deny the motion as a matter of discretion after weighing these equities. The Board's observation that the lead petitioner "does not claim that she is eligible for any immediate relief from removal," CAR 4, does not fill the gap, because the motion sought reopening for the family as a unit and rested the lead petitioner's request on her role as the sole custodian of a child whom the United States has classified as a Special Immigrant Juvenile. CAR 14–15.

This Court may uphold the Board's decision only on the grounds the Board actually invoked. *SEC v. Chenery Corp.*, 332 U.S. 194, 196 (1947). Because the Board did not weigh the equities Petitioners presented, the government may not defend the decision on the theory that the Board could have denied the motion in the exercise of discretion. A decision that acknowledges the existence of an argument in a single sentence, and then decides the motion without addressing the evidence on which the argument rests, is the kind of "summary or conclusory" decision in which this Court has found an abuse of discretion. *Ke Zhen Zhao*, 265 F.3d at 93. The Board's decision also fails to address the primary evidence submitted in support of the motion, including the Family Court's findings and the medical documentation. See *Tanusantoso v. Barr*, 962 F.3d 694, 699–700 (2d Cir. 2020). This omission provides an independent basis for vacatur and remand.

## II. THE BOARD ERRED IN HOLDING THAT AN APPROVED SPECIAL IMMIGRANT JUVENILE CANNOT ESTABLISH PRIMA FACIE ELIGIBILITY UNTIL HIS PRIORITY DATE IS CURRENT

The Board's principal ground for denying the motion was that P.A.T.A. "has not demonstrated prima facie eligibility for relief" because his eligibility for adjustment is "speculative considering the 3-year delay in visa availability." CAR 4. That conclusion rests on legal error.

Under the Board's precedent, the assessment of prima facie eligibility does not require a conclusive determination of entitlement to the underlying immigration benefit. *See Matter of L-O-G-*, 21 I&N Dec. 413, 419–20 (BIA 1996). In the specific context of Special Immigrant Juvenile classification, the Board has identified the juvenile court order as the critical evidence. In *Matter of Cahuec Tzalam*, the very decision on which the Board relied here, the Board explained that "[s]ubmitting the juvenile court order is particularly important to establishing prima facie eligibility," because that order contains the state court findings that the statute requires. 29 I&N Dec. 300, 303–04 (BIA 2025). The respondent in that case had submitted only a USCIS receipt notice, so the Board had "no way of knowing whether the respondent is subject to a juvenile court order" satisfying those requirements, and it concluded that he had "not established a likelihood that he would prevail on his pending special immigrant juvenile petition." *Id.* at 304.

Petitioners' motion supplied exactly what was missing in *Cahuec Tzalam*, and more. With their motion, Petitioners submitted the Westchester County Family Court's custody order and its Special Immigrant Juvenile Findings order. CAR 21–25. That order contains each of the findings that 8 U.S.C. § 1101(a)(27)(J) requires: that P.A.T.A. is dependent on the Family Court and has been placed in the custody of his mother, CAR 24, that reunification with his father "is not viable due to abandonment," *id.*, and that "it is not in the Child's best interest to be returned to Ecuador," CAR 25. Petitioners also submitted the USCIS notice approving P.A.T.A.'s Form I-360. CAR 20. That approval resolves the very question the Board in *Cahuec Tzalam* was unable to answer. P.A.T.A. is not a child whose eligibility for Special Immigrant Juvenile classification is uncertain. He is a child whom USCIS has already classified as a Special Immigrant Juvenile on the basis of the findings that *Cahuec Tzalam* treats as essential. Measured against the Board's own precedent, the record before the Board established not merely prima facie eligibility for classification but the classification itself.

P.A.T.A. satisfies every requirement for adjustment of status except the availability of a visa number. USCIS has already classified him as a Special Immigrant Juvenile. CAR 20. Congress has provided that a Special Immigrant Juvenile "shall be deemed, for purposes of subsection (a), to have been paroled into the United States," thereby satisfying the inspection and admission or parole

requirement of the adjustment statute. 8 U.S.C. § 1255(h)(1). Congress further provided that, in determining a Special Immigrant Juvenile's admissibility, several grounds of inadmissibility "shall not apply," including 8 U.S.C. § 1182(a)(6)(A). 8 U.S.C. § 1255(h)(2)(A). That is the only ground on which P.A.T.A. was charged and ordered removed. CAR 151–52. And Congress has protected his classification against the passage of time, providing that a Special Immigrant Juvenile "may not be denied special immigrant status . . . based on age if the alien was a child on the date on which the alien applied for such status." 8 U.S.C. § 1232(d)(6). P.A.T.A. was thirteen years old when he applied. CAR 20, 21.

Petitioners do not contend that Special Immigrant Juvenile classification by itself confers lawful status or eliminates removability. *Cf. Cahuec Tzalam*, 29 I&N Dec. at 305 n.3. The point is narrower. USCIS's approval of the petition establishes, through the agency's own adjudication, every element of eligibility for adjustment of status other than the availability of a visa number. That is precisely the showing that prima facie eligibility requires.

In short, nothing about P.A.T.A.'s eligibility is uncertain except the date on which a visa number will become available to him, and that date will arrive in the ordinary operation of the statute. 8 U.S.C. § 1153(b)(4). His eligibility is deferred, not speculative. The Board did not identify any respect in which P.A.T.A. would

fail to qualify for adjustment once his priority date becomes current, and it did not acknowledge that Congress has eliminated the only ground of inadmissibility that applies to him. By treating the present unavailability of a visa number as conclusive proof that he could not establish prima facie eligibility, the Board effectively held that no Special Immigrant Juvenile in a backlogged category may ever obtain reopening. That categorical rule finds no support in the statute, the regulations, or *L-O-G-*.

The Board's reliance on *Cahuec Tzalam* compounds the error. That decision arose from an interlocutory appeal by the Department of Homeland Security from an Immigration Judge's order that had administratively closed removal proceedings over the Department's objection. 29 I&N Dec. at 300–01. Its alternative holding, on which the Board relied here, applied the administrative closure requirement that there be "some foreseeable resolution to the ongoing proceedings within a reasonably short period of time." *Id.* at 302 (citation omitted). *See also id.* at 305. The Board below likewise described *Cahuec Tzalam* as "finding that the nearly 5-year gap between the current eligibility priority date and the respondent's priority date is too remote and the ability to adjust status is too speculative to warrant administrative closure." CAR 4. A motion to reopen is governed by a different statute and different regulations, which ask whether the movant has presented new and material evidence and has made a prima facie

showing of eligibility. 8 U.S.C. § 1229a(c)(7). 8 C.F.R. § 1003.2(c)(1). The Board did not explain why an administrative closure standard should govern a motion to reopen, and nothing in the reopening statute or regulations imposes a requirement that relief be available within a particular period of time.

*Cahuec Tzalam* is also distinguishable on its facts in every respect that mattered to the Board's analysis. First, as discussed above, the respondent there submitted only a receipt notice, 29 I&N Dec. at 304, while P.A.T.A. presented the Family Court orders and an approved petition. CAR 20–25. Second, the visa cutoff date in that case was July 1, 2020, which left what the Board called an "extensive, nearly 5-year gap" between the cutoff and the respondent's priority date. 29 I&N Dec. at 304–05. Here, the gap the Board identified, from July 15, 2022 to March 28, 2025, is less than three years, although the Board twice described it as a "3-year" gap. CAR 4. Third, in *Cahuec Tzalam* the Department objected to administrative closure and appealed the Immigration Judge's order. 29 I&N Dec. at 300–01. Here, the Department did not respond to Petitioners' motion at all. CAR 3. The Board made no individualized assessment of any of these differences. It treated the arithmetic difference between two dates on a visa bulletin as dispositive, without considering P.A.T.A.'s approved classification, the statutory protections described above, or the Family Court's findings.

The Board's decision also departs from its own established approach to noncitizens with approved or approvable petitions. In the analogous context of continuances, the Board has directed adjudicators to consider, among other factors, "the DHS response to the motion," "whether the underlying visa petition is prima facie approvable," "the respondent's statutory eligibility for adjustment of status," and "whether the respondent's application for adjustment merits a favorable exercise of discretion." *Matter of Hashmi*, 24 I&N Dec. 785, 790 (BIA 2009). Petitioners invoked *Hashmi* in their filings before the Board. CAR 51–52, 56. Every one of those factors favored P.A.T.A. The Department did not oppose the motion, CAR 3, his petition had been approved, CAR 20, Congress has removed the only ground of inadmissibility that applies to him, and the record reflects no criminal history or adverse factor of any kind, CAR 53–55. Although the Attorney General later restated the continuance standard in *Matter of L-A-B-R-*, 27 I&N Dec. 405 (A.G. 2018), that decision likewise places primary weight on the likelihood that the collateral relief will be granted and whether it will materially affect the outcome of the proceedings, and both considerations favor P.A.T.A. given his approved classification. The Board has also long recognized that discretion "should, as a general rule, be favorably exercised where a prima facie approvable visa petition and adjustment application have been submitted in the course of a deportation hearing or upon a motion to reopen." *Matter of Garcia*, 16

I&N Dec. 653, 657 (BIA 1978). Petitioners relied on *Garcia* as well. CAR 51. The statutory time and number limits enacted after *Garcia* restrict untimely or repetitive motions, but they have no application to Petitioners' first and timely motion. Well after those limits took effect, this Court remanded where the Board failed to explain how its denial of reopening "comports with BIA policy in this area." *Sheng Gao Ni v. BIA*, 520 F.3d 125, 131–32 n.4 (2d Cir. 2008). The Board did not mention *Hashmi*, *Garcia*, or any of these factors. An abuse of discretion may be found where a decision "inexplicably departs from established policies." *Ke Zhen Zhao*, 265 F.3d at 93.

Finally, the Board's reasoning disregards what reopening would accomplish. Reopening would not require the Immigration Judge to grant adjustment before a visa number is available. It would restore P.A.T.A. to proceedings in which the Immigration Judge could manage the case in light of his approved classification, through the case management tools Petitioners identified, including continuance, administrative closure, or termination. CAR 51–52, 56. The Board did not consider whether any of those tools would be appropriate. Because the Board applied the wrong legal standard to the prima facie inquiry, the decision should be vacated and the case remanded.

## III. THE BOARD'S REFUSAL TO REOPEN SUA SPONTE RESTED ON A MISPERCEPTION OF THE GOVERNING LAW AND OF THE MOTION'S PROCEDURAL POSTURE

Although the Board's decision not to reopen sua sponte is generally discretionary, *Ali*, 448 F.3d at 518, this Court has held that where the Board "may have declined to exercise its sua sponte authority because it misperceived the legal background and thought, incorrectly, that a reopening would necessarily fail," remand "for reconsideration in view of the correct law is appropriate." *Mahmood*, 570 F.3d at 469. That is the situation here. The Board's premise was that reopening would necessarily fail because P.A.T.A. could not establish prima facie eligibility until a visa number became available. CAR 4.

The Board's sua sponte analysis consists of a single conclusory sentence that follows directly from its holding that P.A.T.A. could not establish prima facie eligibility because no visa number was immediately available. CAR 4. If that premise is legally incorrect, as shown in Point II, the Board's refusal to reopen sua sponte rests on the same misperception. Moreover, unlike the movant in *Mahmood*, whose untimely motion "could only be considered upon exercise of the Agency's sua sponte authority," 570 F.3d at 469, Petitioners filed a timely motion, so the Board's sua sponte ruling was an alternative ground layered on top of the legal error addressed in Point II rather than an independent and unreviewable basis for the decision. The Board's decision gives no indication that it considered

P.A.T.A.'s approved classification, the statutory protections Congress has given Special Immigrant Juveniles, or the Family Court's findings in deciding whether the case presents an exceptional situation. A child who has been classified by the United States as a Special Immigrant Juvenile, who has been found by a state court to have no one to care for him in his country of nationality, and whose sole legal custodian faces removal, presents precisely the kind of circumstance that the Board's sua sponte authority exists to address. *See* 8 C.F.R. § 1003.2(a).

The Board's sua sponte analysis also reflects a misunderstanding of the motion's procedural posture. The Board invoked *Matter of J-J-*, 21 I&N Dec. 976, 984 (BIA 1997), for the proposition that sua sponte authority "is not meant to be used as a general cure for filing defects or to otherwise circumvent the regulations." CAR 4. But Petitioners' motion contained no filing defect. It was the first motion to reopen, and it was filed ten days after the final administrative order, well within the statutory deadline. 8 U.S.C. § 1229a(c)(7)(C)(i). Petitioners acknowledge that the motion itself incorrectly described its own timing. CAR 12. The Board, however, was obligated to apply the law to the actual dates in the record, and those dates show that the motion was timely. To the extent the Board treated the request as an attempt to circumvent filing limits, it misperceived the posture of the case. Under *Mahmood*, the appropriate remedy is to remand so that

the Board may exercise its discretion in light of the correct law and the correct procedural posture. 570 F.3d at 469.

## CONCLUSION

For the foregoing reasons, Petitioners–Appellants respectfully request that this Court grant the petition for review, vacate the Board of Immigration Appeals' April 10, 2026 decision denying the motion to reopen, and remand for further proceedings consistent with this Court's opinion, including consideration of the evidence and equities presented in the motion under the correct legal standard.

Respectfully submitted,

*/s/ Andrea C. Soto*

Andrea C. Soto, Esq.
Soto Law, PLLC
445 Hamilton Avenue, Suite 600
White Plains, New York 10601
Tel.: 914-290-4900
E.: asoto@andreasotolaw.com

*Counsel for Petitioners–Appellants*

## CERTIFICATE OF SERVICE

I hereby certify that on November 25, 2026, I electronically filed the foregoing with the Clerk of Court using the Appellate Case Management System (ACMS), which will send notice of such filing to all registered ACMS users, including counsel for Respondent.

Dated: White Plains, New York
November 25, 2026

Respectfully submitted,

*/s/ Andrea C. Soto*

By: Andrea C. Soto, Esq.
Soto Law, PLLC
445 Hamilton Avenue, Suite 600
White Plains, New York 10601
T: 914-290-4900 / F: 914-898-9100
asoto@andreasotolaw.com

## TYPE VOLUME LIMITATIONS

This brief complies with the type-volume limitation of Local Rule 32.1(a)(4)(A) because, excluding the parts of the brief exempted by Fed. R. App. P. 32(f), it contains 5,660 words. This brief complies with the typeface and type-style requirements of Fed. R. App. P. 32(a)(5) and 32(a)(6) because it has been prepared in a proportionally spaced typeface using Microsoft Word in 14-point Times New Roman.

## BAR MEMBERSHIP

Andrea C. Soto certifies that she is a member of the bar of the United States Court of Appeals for the Second Circuit.

*/s/ Andrea C. Soto*
Andrea C. Soto, Esq.
Soto Law, PLLC

# ADDENDUM

**NOT FOR PUBLICATION**

U.S. Department of Justice
Executive Office for Immigration Review
Board of Immigration Appeals

MATTER OF:

Marcia Elizabeth ASTUDILLO TORRES, A226-088-780
Paulo Andres TORRES ASTUDILLO, A226-088-781

Respondents

**FILED**
Apr 10, 2026

ON BEHALF OF RESPONDENTS: Andrea Soto, Esquire

IN REMOVAL PROCEEDINGS
On Motion from a Decision of the Board of Immigration Appeals

Before: Mahtabfar, Appellate Immigration Judge

MAHTABFAR, Appellate Immigration Judge

This matter was last before the Board on September 23, 2025, when we dismissed the respondents'[1] appeal from the Immigration Judge's April 29, 2025, decision denying the lead respondent's applications for asylum under section 208(b)(1)(A) of the Immigration and Nationality Act ("INA"), 8 U.S.C. § 1158(b)(1)(A), withholding of removal under section 241(b)(3)(A) of the INA, 8 U.S.C. § 1231(b)(3)(A), and protection under the regulations implementing the Convention Against Torture ("CAT").[2] On October 3, 2025, the respondents, filed the instant motion to reopen their removal proceedings. The Department of Homeland Security has not responded to the motion. The motion will be denied.

The co-respondent seeks reopening so that he may pursue adjustment of status based on the approval of his Special Immigrant Juvenile petition (Form 1-360) by the United States Citizenship and Immigration Services ("USCIS").[3] The respondent argues that her removal

[1] The respondents are the lead respondent (A226-088-780) and her minor child (co-respondent). References to the respondent in the singular are to the lead respondent, unless otherwise indicated.
[2] The Convention Against Torture and Other Cruel, Inhuman or Degrading Treatment or Punishment, Dec. 10, 1984, S. Treaty Doc. No. 100–20, 1465 U.N.T.S. 85 (entered into force for United States Nov. 20, 1994). 8 C.F.R. §§ 1208.16(c), 1208.18(a) (2020); 8 C.F.R. § 1208.17.
[3] We have considered the entirety of the respondents' arguments in the motion]. However, as the respondents have not paginated their motion, we are unable to provide citations to specific pages of their motion in this decision. See EOIR Policy Manual, Part III: BIA Practice Manual, § 3.3(c)(3) ("Briefs and other submissions should always be paginated.").

proceedings should be reopened as she is the co-respondent's sole caregiver and her removal would likely cause the co-respondent to suffer developmental and emotional harm.

The respondents have not established an adequate basis to warrant reopening of their removal proceedings. Here, the respondent does not claim that she is eligible for any immediate relief from removal. Also, the respondents have not established that reopening is warranted in relation to the co-respondent's eligibility for adjustment of status. An alien with an approved visa petition may apply for adjustment of status only when an immigrant visa is immediately available. *See* INA § 245(a), 8 U.S.C. § 1255(a); 8 C.F.R. § 245.1(a), 1245.1(a). Visa availability for those classified as special immigrant juveniles is governed by section 203(b)(4) of the INA, 8 U.S.C. § 1153(b)(4), which sets aside 7.1 percent of the worldwide allotment of immigrant visas annually for fourth preference employment-based immigrants, including most categories of special immigrants. *See also* Bureau of Consular Affs., U.S. Dept of State, Visa Bulletin, Vol XI, No. 13 (April 2026). According to the United States Department of States visa bulletin for April 2026, visas are currently available to aliens who filed their special immigrant juvenile visa petitions before July 15, 2022. The co-respondent's visa priority date is March 28, 2025, indicating a 3-year gap between his priority date and the current eligibility priority date. Thus, the co-respondent's eligibility for adjustment of status based on an approved special immigrant juvenile petition is speculative considering the 3-year delay in visa availability, and he has not demonstrated prima facie eligibility for relief. *See Matter of Cahuec Tzalam*, 29 I&N Dec. 300, 305 (BIA 2025) (finding that the nearly 5-year gap between the current eligibility priority date and the respondent's priority date is too remote and the ability to adjust status is too speculative to warrant administrative closure); *Matter of Chen*, 28 I&N Dec. 676, 681-82 (BIA 2023) (holding that a respondent seeking reopening must establish prima facie eligibility for the relief sought).

The respondents alternatively request we reopen proceedings sua sponte. Sua sponte authority may be exercised to reopen in truly exceptional situations where the interests of justice would be served. *Matter of G-D-*, 22 I&N Dec. 1132, 1134 (BIA 1999). This sua sponte authority is not meant to be used as a general cure for filing defects or to otherwise circumvent the regulations, where enforcing them might result in hardship. *Matter of J-J-*, 2 1 I&N Dec. 976, 984 (BIA 1997). We conclude that the record before us does not present an exceptional situation that warrants the exercise of our sua sponte reopening authority in these proceedings. ). For the foregoing reasons, we deny the respondents' motion to reopen these proceedings.

Accordingly, the following order will be entered.

ORDER: The motion to reopen is denied.

NOTICE: If a respondent is subject to a final order of removal and willfully fails or refuses to depart from the United States pursuant to the order, to make timely application in good faith for travel or other documents necessary to depart the United States, or to present himself or

herself at the time and place required for removal by the Department of Homeland Security, or conspires to or takes any action designed to prevent or hamper the respondent's departure pursuant to the order of removal, the respondent shall be subject to a civil monetary penalty of up to $998 for each day the respondent is in violation. *See* section 274D of the Immigration and Nationality Act ("INA"), 8 U.S.C. § 1324d; 8 C.F.R. § 280.53(b)(14). Further, any respondent that has been denied admission to, removed from, or has departed the United States while an order of exclusion, deportation, or removal is outstanding and thereafter enters, attempts to enter, or is at any time found in the United States shall be fined or imprisoned not more than two years, or both. *See* INA § 276(a), 8 U.S.C. § 1326(a).

**NOT FOR PUBLICATION**

U.S. Department of Justice
Executive Office for Immigration Review
Board of Immigration Appeals

MATTER OF:

Marcia Elizabeth ASTUDILLO TORRES, A226-088-780
Paulo Andres TORRES ASTUDILLO, A226-088-781

Respondents

**FILED**
Sep 23, 2025

ON BEHALF OF RESPONDENTS: Andrea Soto, Esquire

IN REMOVAL PROCEEDINGS
On Appeal from a Decision of the Immigration Court, New York, NY

Before: Mann, Appellate Immigration Judge

MANN, Appellate Immigration Judge

The respondents,[1] natives and citizens of Ecuador, have appealed from the Immigration Judge's April 29, 2025, decision denying the respondent's applications for asylum and withholding of removal under sections 208(b)(1)(A) and 241(b)(3)(A) of the Immigration and Nationality Act (INA), 8 U.S.C. §§ 1158(b)(1)(A), 1231(b)(3)(A) as well as his request for protection under the regulations implementing the Convention Against Torture ("CAT").[2] The respondents' appeal will be dismissed.

We review findings of fact determined by an Immigration Judge, including credibility findings, under a "clearly erroneous" standard. 8 C.F.R. § 1003.1(d)(3)(i). We review questions of law, discretion, and judgment, and all other issues in appeals from decisions of Immigration Judges de novo. 8 C.F.R. § 1003.1(d)(3)(ii).

[1] The respondents are an adult female, the lead respondent (A226-088-780), and her minor child. The child is a derivative beneficiary of the adult female's application for asylum. *See Matter of A-K-*, 24 I&N Dec. 275, 279 (BIA 2007) (providing for derivative asylum eligibility but not derivative withholding of removal benefits). Hereinafter, all references to the respondent related to the lead respondent, the adult female.

[2] The Convention Against Torture and Other Cruel, Inhuman or Degrading Treatment or Punishment, Dec. 10, 1984, S. Treaty Doc. No. 100-20, 1465 U.N.T.S. 85 (entered into force for United States Nov. 20, 1994). 8 C.F.R. §§ 1208.16(c)-1208.18.

(continued…)

The respondent fears criminals who attempted to collect a debt that was incurred by her former partner (IJ at 3; Tr. at 44-45). The respondent also fears criminals who were calling her and questioning her about her son, the rider respondent (IJ at 2-3; Tr. at 43-35). The respondent testified that her son also observed "someone" standing by the bus station outside of the building where he practiced sports and that her son "felt" that the person was "watching him" (Tr. at 45, 48). On appeal, the respondent claims that she is eligible for asylum and related protection based on her membership in the particular social group defined as "single Ecuadorian women targeted by transnational gangs" (IJ at 4; Tr. at 41; Respondent's Br. at 2-3).[3]

Even if eligible for asylum, the Immigration Judge denied asylum and withholding of removal based on the determination that the respondent's proposed particular social group of "single Ecuadorian women targeted by transnational gangs" is not cognizable under the INA (IJ at 5-6). To constitute a cognizable particular social group, a group must be "(1) composed of members who share a common immutable characteristic, (2) defined with particularity, and (3) socially distinct within the society in question." *Paloka v. Holder*, 762 F.3d 191, 196 (2d Cir. 2014) (quoting *Matter of M-E-V-G-*, 26 I&N Dec. 227, 237 (B.I.A. 2014)); *see also Ucelo-Gomez v. Mukasey*, 509 F.3d 70, 72-74 (2d Cir. 2007). The Immigration Judge correctly determined that the proposed group is not socially distinct (IJ at 5-6).

The respondent did not provide sufficient evidence to show that Ecuadoran society perceives the aforementioned group to be a distinct social group. *See Paloka*, 762 F.3d at 196 ("in determining particularity and social distinction what matters is whether society as a whole views a group as socially distinct, not the persecutor's perception."). Moreover, as found by the Immigration Judge, the respondent's proposed group is impermissibly circular (IJ at 5). *See id.* ("Persecutory conduct aimed at a social group cannot alone define the group, which must exist independently of the persecution."); *Ucelo-Gomez*, 509 F.3d at 73 ("When the harm visited upon members of a group is attributable to the incentives presented to ordinary criminals rather than to persecution, the scales are tipped away from considering those people a 'particular social group' within the meaning of the INA."); *Hernandez-Chacon v. Barr*, 948 F.3d 94, 101–02 (2d Cir. 2020) (finding insufficient evidence that women who rejected sexual advances of gang members were perceived as a particular social group in El Salvador).

On appeal, the respondent does not meaningfully challenge the Immigration Judge's findings and conclusion that the respondent did not establish the requisite nexus between the past and feared future harm and her claimed particular social group or any other protected ground under the INA (IJ at 6-7). *See also Ramsameachire v. Ashcroft*, 357 F.3d 169, 178 (2d Cir. 2004) (opining that a nexus to a protected ground under the INA is a required element for both asylum and withholding

[3] During the merits hearing, the respondent alleged eligibility for asylum and related protection based on her political opinion and membership in the particular social group comprised of "single Ecuadorian women targeted by transnational gangs" (IJ at 4). On appeal, the respondent does not contest the Immigration Judge's nexus finding relating to her political opinion claim (IJ at 4-5). Hence, that issue is waived. *Matter of D-G-C-*, 28 I&N Dec. 297, 297 n.1 (BIA 2021) (recognizing that aspects of the Immigration Judge's decision that are not meaningfully challenged on appeal are deemed waived before the Board).

of removal under the INA); *Matter of C-T-L-*, 25 I&N Dec. 341, 344-49 (BIA 2010) (indicating that absent a showing that a protected ground under the INA would be a "central reason" for the claimed past or future harm, the respondent cannot establish eligibility for either asylum or withholding of removal under the INA); *Matter of P-B-B-*, 28 I&N Dec. 43, 44 n.1 (BIA 2020) (stating that arguments not raised on appeal are deemed waived); *Matter of N-A-I-*, 27 I&N Dec. 72, 73 n.1 (BIA 2017) (same), aff'd sub nom. *Ali v. Barr*, 951 F.3d 275 (5th Cir. 2020). As the above issues are dispositive of the respondent's asylum and withholding of removal claim, we will affirm the denial of the respondent's applications for asylum and withholding of removal under the INA.

Also, we are not persuaded by the respondent's argument that the Immigration Judge failed to conduct an individualized analysis of the rider respondent's eligibility for relief independent of the principal applicant (Respondent's Br. at 3). The rider respondent did not file a separate asylum application, and his claim is predicated on testimony and evidence provided by the lead respondent which the Immigration Judge found to be unpersuasive.

Last, the respondent has not meaningfully challenged the Immigration Judge's denial of CAT protection (IJ at 7-8). Thus, we deem any further argument on this issue waived. *Yueqing Zhang v. Gonzales*, 426 F.3d 540, 545 n.7 (2d Cir. 2005) (deeming argument abandoned where "only a single conclusory sentence" was devoted to it). Accordingly, the following order will be entered.

ORDER: The appeal is dismissed.

NOTICE: If a respondent is subject to a final order of removal and willfully fails or refuses to depart from the United States pursuant to the order, to make timely application in good faith for travel or other documents necessary to depart the United States, or to present himself or herself at the time and place required for removal by the Department of Homeland Security, or conspires to or takes any action designed to prevent or hamper the respondent's departure pursuant to the order of removal, the respondent shall be subject to a civil monetary penalty of up to $998 for each day the respondent is in violation. *See* section 274D of the Immigration and Nationality Act, 8 U.S.C. § 1324d; 8 C.F.R. § 280.53(b)(14).

UNITED STATES DEPARTMENT OF JUSTICE
EXECUTIVE OFFICE FOR IMMIGRATION REVIEW
UNITED STATES IMMIGRATION COURT
NEW YORK, NEW YORK

File: A226-088-780
A226-088-781

April 29, 2025

In the Matters of

MARCIA ELIZABETH ASTUDILLO TORRES )
PAULO ANDRES TORRES ASTUDILLO )
RESPONDENTS' )

IN REMOVAL PROCEEDINGS

CHARGES: 212(a)(6)(A)(i)

APPLICATIONS: Asylum, Withholding of Removal, Protection under the Convention Against Torture

ON BEHALF OF RESPONDENT: ANDREA SOTO

ON BEHALF OF DHS: JANAE KEYS

## ORAL DECISION OF THE IMMIGRATION JUDGE

The Respondents' are a mother and her child, both Natives and citizens of Ecuador. They entered the United States on or about June 6th, 2024 and were not admitted or paroled after inspection by an immigration officer. See Exhibit 1-1A.

The Department of Homeland Security served the Respondents with Notices to Appear. The filing of the NTAs in Immigration Court vested to the Court with jurisdiction. 8 C.F.R. § 1003.14(a). Through counsel the Respondents' admitted the factual

allegations, conceded removability under INA § 212(a)(6)(A)(i) the Court upon the Department's recommendation designated Ecuador for the Respondents'. On October 18th, 2024 the Respondent filed an application for asylum, withholding of removal under § 241(b)(3) of the INA and protection under the convention Against torture. See Exhibit 3-3A. She listed her child as a derivative asylum applicant. ID. References to "the Respondent" in the balance of this decision refer to Ms. Astudillo Torres.

SUMMARY OF THE EVIDENTIARY RECORD

Exhibits

The Respondent offered documentary and testimonial evidence in support of her applications for relief. See Exhibit 3-5. All documents have been admitted into evidence. In making a decision in this matter the Court has considered all of this evidence in its entirety regardless of whether specifically mentioned in the text of this decision and has accorded appropriate way to such evidence.

Testimony

The following section represents the summary of the Respondents' application for relief, written statement, and testimony at the individual hearing and are not findings of fact by the immigration Court. See *Juan v. Holder*, 677 F.3d 130, 137 (2d. 2012). The Respondent writes in her statement that she became pregnant in 2010 and moved in with the father of her child Raul Aledeo Torres Altamarano. He would drink, do drugs, and go out on the weekends and then return home and verbally and physically abuse the Respondent. She testified that in 2018 she separated from Raul and has had no further contact with him or his family. The Respondent writes that in February 2024 she started receiving phone calls inquiring about her and her son. She later learned that one of the calls came from Turi where a prison known to house gang members is located.

In March 2024 the Respondent son said that there was a man outside of his school. When the Respondent reported it to the police they told her that she needed to present evidence. In April 2024 a man approached the Respondent at her work and told her that she needed to give him money that was owed by Raul. She understood that the men calling her were gang members from the Los Lobos because she knew that Raul had prior dealings with them. The Respondent fears harm from the gang members if returned to Ecuador.

STATEMENT OF THE LAW

An addendum stating the standards of law and burdens of proof relevant to the issues in this matter will be served on the parties in a copy placed in the record of proceeding. That addendum is hereby incorporated into this decision by reference and must be read in conjunction with any laws decided in this oral decision.

FINDINGS AND CONCLUSIONS OF THE COURT

The Department opposed relief in this matter. After considering all of the evidence and testimony in this case the Court agrees with the Department it finds that the Respondent to have not established eligibility for asylum, withholding, or CAT protection. As a threshold matter the Court finds that the Respondent timely filed her application within one year of her entry into the United States. See INA § 208(a)(2)(B). Furthermore, for the purpose of the analysis in this decision the Court will assume the Respondents' credibility. INA § 208(b)(1)(B)(3).

The Department argues that the Respondent is ineligible for asylum based on the circumstantial lawful pathways rule. See generally 8 C.F.R. § 1208.33. The Court agrees that based on the record there is a presumption of ineligibility based on the

circumstantial lawful pathways rule. Upon review of the Respondents' testimony and record evidence the Court finds the Respondent has not offered testimony that she qualifies for an exception or does she rebut that presumption based on the preponderance of the evidence. See Exhibit 3-5. The Court has also considered the family unity exception as well.

However, where the Court is also denying the Respondents' application for asylum on the grounds which will be discussed infra the Court finds that the presumption is not rebutted because the Respondent would not be granted asylum but for the presumption of ineligibility. See ID. Thus, the Court finds the Respondent is not eligible for asylum based on the circumferential pathways rules and her asylum application must be denied on this basis. Nonetheless, the Court will make alternative findings infra.

To be statutorily eligible for asylum, the applicant bears the burden of establishing that she is a refugee which requires a showing of past persecution or a well founded fear of future persecution on account of race, religion, nationality, membership in a particular social group, or political opinion. INA § 101(a)(42)(A), 208(b)(1)(A), 208(b)(1)(B). Here, the Respondent through counsel contends that she was harmed and fears future harm on account of her political opinion and her membership in a particular social group. The Respondent through counsel's legal brief puts forth the following proposed particular social group "single Ecuadorian women targeted by transnational gangs". The Court turns first to political opinion. To qualify for a political opinion an opinion must involve some sort of support for or disagreement with the belief system, policies, or practices of a government and its mentalities. See Zelea Moreno v. Wilkenson, 989 F.3d 190, 199-200 (2d. 2021).

The Respondent has not differentiated herself from all persons who have issues

or opposed gangs or criminal groups. There is nothing to show that anything the Respondent did took on a political dimension. She has not expressed any political opinion. The Respondent it did not have any personal encounters with the gang members in which she did express a political opinion. On this record, the Court does not find that the Respondent expressed disagreement with the gang or a criminal band belief system, policies or practices and the evidence does not show that the gang members accused her of such opinion. There's no evidence that the gang members made any statements or that they believe she had any anti gang political opinion or that they would have or that they had targeted her on that account. The record also contains insufficient evidence that the Respondent had been harmed by Raul on account of any political opinion.

Rather as testified to by the Respondent Raul had been involved with drugs and alcohol. When he returned home drunk he would verbally and physically harm her period while his actions are reprehensible the Respondent has not demonstrated on this record that Raul had harmed her on account of any political opinion. As such, the Court finds that the Respondent has not shown a nexus to political opinion, imputed or otherwise.

The Court next turns to the Respondents' proposed particular social group. It has been established that a particular social group must be composed of members who share a common, immutable characteristic, defined with particularity, and socially distinct within the society in question. See *Matter of M-E-V-G-*, 26 I&N Dec. 227, 237 (BIA 2014). The Court finds that the proposed particular social groups of "single Ecuadorian women targeted by transnational gangs" it's not cognizable because it is circular where it does not exist independently of the harm asserted and is defined by the persecutory conduct. *Matter of M-E-V-G-*, 26 I&N Dec. 227, 236-243 (A.G. 2014). See

also *Matter of W-G-R-*, 26 I&N Dec. 208, 215 (BIA 2014).

The Court further finds that the particular social group fails whereas is not composed of members who share a common immutable characteristic as being single is not an immutable characteristic. Additionally, the particular social group fails where there is insufficient evidence in the record to demonstrate that this particular social group is socially distinct within the Ecuadorian society.

Here, the Respondent was being threatened by members of the Los Lobos who are demanding money or repayment of money and she did not comply with their demands. Having considered the totality of the Respondent's testimony and the record evidence the Court finds that there was insufficient evidence to conclude that the threats were on account of any protected ground but rather the Respondent was a victim of generalized acts of crime committed by the Los Lobos gang members in furtherance of their criminal enterprise.

The board has held when criminals and criminal organizations direct harm against anyone and everyone perceived to have interfered with or who might present a threat to their criminal enterprises a particular individual generally does not fear persecution on account of her membership in some group. See *Matter of S-E-G-*, 21 I&N Dec. 579, 587 (BIA 2008). At the Second Circuit has stated "when the harm visited upon members of a group is attributable to the incentives presented ordinary criminals rather than to persecution the scales are tipped away from considering those people a particular social group within the meaning of the INA". See *Ucelo Gomez v. Mukasey*, 509 F.3d 70, 73 (2d. 2007).

What the Respondent fears is generalized violence committed by gang members. Generalized violence does not form the basis for asylum. See *Melgar de Torres v. Reno*, 191 F.3d 307, 314 (2d. 1999). The Court concludes that the

Respondent has not met her burden to establish the requisite Nexus. This alone is dispositive of her claim for asylum. Thus her asylum application must be denied on this basis. It follows that the minor Respondent’s derivative application for asylum is denied as well.

## WITHHOLDING OF REMOVAL UNDER THE INA

In as much as the Respondent failed to satisfy the lower burden of proof required for asylum it follows that she has also failed to satisfy the more stringent clear probability of persecution standards required for statutory withholding under INA § 241(b)(3). See Lecaj v. Holder.

## CAT PROTECTION

Respondent is also ineligible for CAT protection. If the CAT has no Nexus requirement. However, the Respondent has not established that it is more likely than not she would be tortured upon her return to Ecuador. Her fear is speculative at best. The Respondent was not subject to past torture. She has suffered insufficient evidence that anyone is still seeking her out for harm. On this record the Respondent cannot establish that it is more likely than not that she would be tortured upon her return. The Respondent also has not shown that the Ecuadorian government would acquiesce in any future torture. The Respondent fears private actors. The Court recognizes that there is an issue with crime and gang violence in Ecuador. See Exhibit 4. The 2023 Department of State report notes that violence is being perpetrated by detained gang members. See Exhibit 4 tab D. The Respondent submitted evidence notes that prisons are the command center of criminal groups among which are the Los Generos, the Los Lobos, the Lagartos, or the Los Tecanaros. See Exhibit 4, page 101.

While the existence of prison violence is troubling it is an indication that Ecuadorian government is arresting, prosecuting and imprisoning members of criminal gangs. In areas of gang violence, the government has implemented urgent security measures and declared a state of emergency in order to confront the crime. See Exhibit 4, tab D. According to a CNN article submitted by the Respondent Ecuador's president Daniel de Boa has declared an internal armed conflict within the country ordering security forces to neutralize several criminal groups accused of spreading extreme violence in the country. See Exhibit 4, page 89. The armed forces also have the support of the national police and Ecuador to assist with neutralizing members of these criminal gangs. See Exhibit 4, page 106.

Moreover, the Respondents' submitted evidence shows that Ecuadorian government is arresting criminals and members of these gangs. For example, one article states that a man presumed to be a member of the Los Lobos was arrested by the police for shooting a victim. See Exhibit 4 page 76. Based on this record, the Court cannot find that the Respondent has shown that it is more likely than not that she would be tortured upon her return to Ecuador. Nor has she shown the requisite state action. Her application for CAT protection is therefore denied. Based on the foregoing, the following orders are entered:

## ORDERS

ORDER it is hereby ordered that the Respondents' application for asylum pursuant to INA § 208 be denied.

ORDER It is further ordered that the Respondents' application for withholding of removal pursuant to INA § 241(b)(3) be denied.

ORDER It is further ordered that the Respondents' application for withholding of

removal under the convention against torture be denied.

ORDER It is further ordered that the Respondents' be removed from the United States to Ecuador on the same charges of removability contained in the respective Notices to Appear.

Lee, Kalenna
Immigration Judge

| Receipt Number<br>MSC2590447524 | | Case Type<br>I360 - PETITION FOR AMERASIAN, WIDOWER, OR SPECIAL IMMIGRANT |
|---|---|---|
| Received Date<br>03/28/2025 | Priority Date<br>03/28/2025 | Petitioner A226 088 781<br>TORRES ASTUDILLO, PAULO ANDRES |
| Notice Date<br>08/22/2025 | Page<br>1 of 1 | Beneficiary A226 088 781<br>TORRES ASTUDILLO, PAULO ANDRES |

SOTO LAW PLLC
c/o ANDREA SOTO
445 HAMILTON AVENUE STE 407
WHITE PLAINS NY 10601

Notice Type: Approval Notice
Class: SL6
Section: Special Immigrant-Juvenile

The above petition has been approved.

The petition indicates that the person the petition is for is in the United States and will apply for adjustment of status. He or she should access the USCIS website at USCIS.gov/i-485 to obtain Form I-485, Application for Permanent Residence. A copy of this notice should be submitted with the application.

If the person for whom you are petitioning decides to apply for a visa outside the United States based on this petition, the petitioner should file Form I-824, Application for Action on an Approved Application or Petition, to request that we send the petition to the Department of State National Visa Center (NVC).

The NVC processes all approved immigrant visa petitions that require consular action. The NVC also determines which consular post is the appropriate consulate to complete visa processing. It will then forward the approved petition to that consulate.

The approval of this visa petition does not in itself grant any immigration status and does not guarantee that the alien beneficiary will subsequently be found to be eligible for a visa, for admission to the United States, or for an extension, change, or adjustment of status.

Please read the back of this form carefully for more information.

**THIS NOTICE IS NOT A VISA AND MAY NOT BE USED IN PLACE OF A VISA.**

**NOTICE:** Although this application/petition has been conditionally approved, USCIS and the U.S. Department of Homeland Security reserve the right to verify the information submitted in the application, petition, and/or supporting documentation to ensure conformity with applicable laws, rules, regulations, and other authorities. Methods used for verifying information may include, but are not limited to, the review of public information and records, contact by correspondence, the Internet, or telephone, and site inspections of businesses and residence. Information obtained during the course of verification will be used to determine whether final approval, revocation, rescission, and/or removal proceedings are appropriate. Applicants, petitioners, and the representatives of record will be provided an opportunity to address derogatory information before any formal proceedings is initiated.

Please see the additional information on the back. You will be notified separately about any other cases you filed.

**USCIS encourages you to sign up for a USCIS online account. To learn more about creating an account and the benefits, go to https://www.uscis.gov/file-online.**

National Benefits Center
U.S. CITIZENSHIP & IMMIGRATION SVC
P.O. Box 648003
Lee's SummitMO64002
**USCIS Contact Center: www.uscis.gov/contactcenter**

F.C.A §§651, 652, 654;
D.R.L §240

At a Term of the Family Court of the
State of New York, held in the
County of Westchester,
White Plains, New York,
March 19, 2025

PRESENT: Hon. Arlene A. Gordon-Oliver, J.F.C.
FAMILY COURT OF THE STATE OF NEW YORK
COUNTY OF WESTCHESTER

----------------------------------------------------------------------X

In the Matter of a Proceeding for
Custody under article 6
Of the family Court Act or Section 240
of the Domestic Relations Law

Docket No. V-09237-24

File No. 177147

MARCIA ELIZABETH ASTUDILLO TORRES
Petitioner
Relationship to child: Mother

-against-

**ORDER ON PETITION**
**FOR CUSTODY**

RAUL ELIDIO TORRES ALTAMIRANO
Respondent
Relationship to child: Father

Subject Child: **PAULO ANDRES TORRES ASTUDILLO**
**(DOB: 05/09/2011)**

A Minor.

----------------------------------------------------------------------X

The Petitioner herein having filed a petition on October 11, 2024, pursuant to Article 6 of the Family Court Act, Section 240 of the Domestic Relations Law, requesting an Order of custody of the following Paulo Andres Torres Astudillo, Date of Birth May 9, 2011;

And the Respondent having consented to the petition;

And the Court-Appointed Attorney for the Child, Donna Abrams, Esq. having consented to the award of custody to the Petitioner;

And the Court having searched the statewide registry of orders of protection, the sex offender registry and the Family Court's warrant and child protective records, and having notified the attorneys for the parties and for the child of the results of these searches; and having found no results;

AND THE MATTER HAVING DULY COME ON TO BE HEARD BEFORE THIS COURT, NOW, after examination and inquiry into the facts and circumstances of the case and after hearing the proofs and testimony offered in relation thereto, this Court finds and determines that:

**IT IS THEREFORE ORDERED** that the best interest of Paulo Andres Torres Astudillo requires that Custody be awarded as follows: sole legal and physical custody to the Petitioner, his mother, Marcia Elizabeth Astudillo Torres.

Dated: March 19, 2025
White Plains, New York

ENTER: ______________________________
Hon. Arlene A. Gordon-Oliver, J.F.C.

PURSUANT TO SECTION 1113 OF THE FAMILY COURT ACT, AN APPEAL FROM THIS ORDER MUST BE TAKEN WITHIN 30 DAYS OF RECEIPT OF THE ORDER BY APPELLANT IN COURT, 35 DAYS FROM THE DATE OF MAILING OF THE ORDER TO APPELLANT BY THE CLERK OF COURT, OR 30 DAYS AFTER SERVICE BY A PARTY OF THE ATTORNEY FOR THE CHILD UPON THE APPELLANT, WHICHEVER IS EARLIEST.

Check applicable box:
( ) Order mailed on [specify date(s) and to whom mailed]: ______________________
( ) Order received in court on [specify date(s) and to whom given]: ______________________

8 U.S.C. § 1101 GF-42

(Special Immigrant Juvenile Status Order)
At a Term of the Family Court of the State
of New York, held in the County of
Westchester-White Plains, NY,
March 19, 2025

PRESENT: Hon. Arlene A. Gordon-Oliver, J.F.C.
FAMILY COURT OF THE STATE OF NEW YORK
COUNTY OF WESTCHESTER

---------------------------------------------------------------------X

In the Matter of a Proceeding for
Custody under article 6
Of the family Court Act or Section 240
of the Domestic Relations Law

Docket No. V-09237-24

File No. 177147

MARCIA ELIZABETH ASTUDILLO TORRES
Petitioner
Relationship to child: Mother

-against-

**ORDER – SPECIAL IMMIGRANT JUVENILE STATUS**

RAUL ELIDIO TORRES ALTAMIRANDO
Respondent
Relationship to child: Father

**Subject Child: PAULO ANDRES TORRES ASTUDILLO (DOB: 05/09/2011)**

A Minor.

---------------------------------------------------------------------X

This Court, after examining the motion papers and supporting affidavits, all the pleadings and prior proceedings in this matter, and hearing credible testimony, finds, in accordance with 8 U.S.C. § 1101(a)(27)(J), New York State Family Court Acts § 651, § 1012 and New York State Surrogate's Court Procedure Act § 1701, that:

1. This Family Court is a court which has jurisdiction to make judicial determinations about the custody and care of minors, which include juveniles up to the age of 21. This court took jurisdiction of the above-named juvenile prior to the age of 21 pursuant to New

York State Family Court Acts § 651, §661(a), § 115(c) and New York State Surrogate's Court Procedure Act § 103(27).

2. The above-named child is under 21 years of age and a minor for purposes of Guardianship and/or custody of the person. New York Surrogate Court Procedure Act § 103(27), New York Family Court Act § 661(a).

3. The above-named child is unmarried.

4. The above-named child dependent on the Family Court, a juvenile court under New York law, by virtue of a custody order that was granted by this Court. The above-named child is dependent upon the Family Court and has been committed to and placed in the physical custody of individual, namely, Marcia Elizabeth Astudillo Torres, or entity appointed by the state of Family Court pursuant to the New York State Family Court Acts § 141, § 651, § 1012, and New York State Surrogate's Court Procedure Act § 1701. *Matter of Antowa McD, 856 NYS2d 576 (1st Dept. 2008). Matter of Antowa McD, 856 NYS2d 576 (1st Dept. 2008); Matter of Trudy-Ann W. v. Joan W., 901 NYS2d 296 (2d Dept. 2010)*. He has been in the physical care of, Marcia Elizabeth Astudillo Torres, and continues to reside with her. The grant of custody also constitutes a legal commitment of the custodian to the child pursuant to New York Surrogates Act § 1706, which states that the custodian "shall have the right and responsibility to make decisions, including issuing any necessary consents, regarding the child's protection, education, care and control, health, and medical needs, and the physical custody of the person of the child." The grant of custody is also pursuant to New York Family Court Act § 657, which enunciates the rights and authorities of a person possessing a lawful order of custody of a child vis-à-vis school enrollment, health insurance enrollment, and specifics expressly that "persons possessing a lawful order of custody of a child shall have the right and responsibility to make decisions, including issuing any necessary consents, regarding the child's protection, education, care and control, health and medical needs, and the physical custody of the child." There is no legal distinction in New York between the effects of a grant of custody as compared to a grant of guardianship. See, *Matter of Allen V. Fiedler*, 96 A.D. 3d 1682 (4th Dept. 2012). The child is in need of a legal custodian to support him with housing, medical care, educational planning, emotional and financial support. The Court finds that custody serves the child's best interests.

5. Reunification with the father, Raul Elidio Torres Altamirano, is not viable due to abandonment. Thus, under NY Fam. Ct. Act Section 1092(a) the child is considered a

destitute child because he was left in a state of suffering due to lack of care of the father. The record establishes that the father has left the child without providing for his support or care for over seven (7) years. The child's father has not had any contact with the Child for over seven (7) years. After testimony and a review of the record the court finds that the father has not supported the child emotionally or financially. *Alamigir A.*, 81 3d 937 (1st Dept. 2011). The father has not provided for food, clothing, shelter, educational and medical needs as required. The father has neglected his parental duties. The child is abandoned under NYS Social Services Law, Section 384-b(5)(a). *Pineda v. Diaz, 127 A.D.3s 1203 (2d Dep't 2015); Marcelina M.G. v. Israel S., 112 A.D.3d 100, 973 N.Y.S. 2d 714, 721 (2d Dep't 2013).*

6. It is in the child's best interest to remain with the petitioner. There is no available relative or viable resource for the child to live with in the country of nationality or country of last habitual residence of the child or the birth parents. There is no one who is able or willing to provide the child with a safe home and provide for the child's safety and needs. It is in the child's best interest to remain with the petitioner where he has the opportunity to be in a stable environment and further his education. It is not in the Child's best interest to be returned to Ecuador. *Trudy Ann W., 73 AD 793 (2nd Dept. 2010); N.Y. Surr. Ct. Proc. Act § 1707; See also, Eschbach v. Eschbach, 56 N.Y.2d 167 (1982), Matter of Marisol N.H., 115 AD3d 185 (2d Dept. 2014).*

Dated: March 19, 2025
White Plains, New York

ENTER:

______________________________
Hon. Arlene A. Gordon-Oliver, J.F.C.

PURSUANT TO SECTION 1113 OF THE FAMILY COURT ACT, AN APPEAL FROM THIS ORDER MUST BE TAKEN WITHIN 30 DAYS OF RECEIPT OF THE ORDER BY APPELLANT IN COURT, 35 DAYS FROM THE DATE OF MAILING OF THE ORDER TO APPELLANT BY THE CLERK OF COURT, OR 30 DAYS AFTER SERVICE BY A PARTY OR THE ATTORNEY FOR THE CHILD UPON THE APPELLANT, WHICHEVER IS EARLIEST. Check applicable box:

( ) Order mailed on [specify date(s) and to whom mailed]:____________________
( ) Order received in court on [specify date(s) and to whom given]:______________

*Hugo M. Morales, M.D., P.C.*
*918 Pelham Pkwy South*
*Bronx, New York 10462*
*(718) 547-5300*

*Diplomate of Psychiatry and Neurology*
*Diplomate of the American Board of Forensic Medicine*

September 30, 2025

Re: Marcia E. Austudillo Torres
DOB: 07/28/1989

## PSYCHIATRIC EVALUATION

Patient is a female born in Ecuador on July 28, 1989. She came under my care due to a fragile mental status. Her demeanor has been described as extremely depressed, apathetic, worrisome, tearful and miserable. Her severe psychopathology as manifested by depression, anxiety, nightmares, worriness, crying spells, insomnia, frustration, irritability and agitation interfere greatly with her ability to function properly at any level despite trying to do the best she can.

## CHIEF COMPLAINTS

The patient's predicament began after May 6, 2025. She received an order of deportation. Following this order, she experienced a decline in her cognitive, emotional and behavioral functioning. Her psychological distress has been described as having frequent bad days, feeling extremely despondent, tearful, worrisome, lacking strength and motivation, and suffering from insomnia, flashbacks and nightmares. Feelings of uselessness, helplessness, crying spells, negative expectancy of the future, frustration, poor concentration and poor memory hinder her ability to function properly at any level. Marcia stated that she becomes frustrated and crying hysterically thinking about what would happen to her 14-years-old son if she gets deported, "he needs me."

## LONGITUDINAL HISTORY

Patient migrated to the United States on June 9, 2024, looking for a better way of living. As stated above, her predicament began after May 6, 2025, after being notified of an order of deportation. She has become progressively depressed, suffering from severe anxiety, poor concentration, poor memory, frustration and severe crying spells.

**Patient: Marcia E. Austudillo Torres**
**DOB: 07/28/1989**

## MENTAL STATUS

It is my professional opinion based upon a reasonable degree of psychiatric certainty that the patient's mental status and behavior in general is totally dysfunctional because of her immigration status, which has rendered her unable to cope properly with her daily activities and personal needs. I spent a considerable amount of time reassuring and advising her to keep calm and think positively. Her mental status has been seriously compromised. She is well oriented to time, place and person. Patient's stream of mental activity is coherent and relevant. Insight judgment is fair. Her mood is depressed, anxious, worrisome and apathetic.

## DIGNOSIS

Major Depressive Disorder (F33.2)
Generalized Anxiety Disorder (F41.1)

## CAUSALITY

I am respectfully asking that you take into consideration the hardship Ms. Austudillo is and will continue facing if she is not granted a waiver for cancellation of removal. Her absence will be an extreme hardship for her and her son as he not only loves her; he depends on her in every aspect of his life. I know you hear from thousands of people daily, respectfully, please consider this case and grant Ms. Austudillo this removal of cancellation. It is my professional opinion that Ms. Austudillo presents no danger whatsoever to the interest of the United States of America.

## RECCOMENDATION:

Patient was advised to continue her treatment on a regular basis.

Very truly yours,

Hugo M. Morales, M.D., P.C.

HUGO M. MORALES, MD, PC
910 PELHAM PKWY SOUTH
BRONX, NY 10462
LIC# [illegible]